[No. H002672. First Dist., Div. One. Dec. 21, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
GLEN R. MAXWELL, Defendant and Appellant.

COUNSEL

Manuel J. Baglanis, under appointment by the court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, David D. Salmon and Gerald A. Engler, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

RACANELLI, P. J.—In this appeal from a conviction for possession of "crack" cocaine, the narrow issue presented is whether the police may direct a passenger to alight from a vehicle lawfully stopped for a traffic offense. Under the circumstances shown herein, we will conclude that the conduct was lawful and affirm the judgment.

## FACTS

The relevant facts are basically undisputed: About 3 a.m. on August 6, 1986, San Jose Police Officer Greg Albin was on routine patrol in a marked patrol car when he observed a four-door vehicle without any license plates. Officer Albin stopped the automobile, approached the driver, Clarence Jordan, and requested his driver's license. Defendant was seated in the right rear passenger seat, and another occupant, Wilmer Spikes, was seated in the front passenger seat.

When Jordan was unable to produce a driver's license or other identification, Officer Albin asked him to step from the car and eventually turned him over to a "back-up" officer (Jones) on the sidewalk.

Officer Albin then returned to the vehicle intending to question the passengers separately concerning the driver's identity and to determine if either had a driver's license so that the vehicle could be driven away from the scene.

Officer Albin first approached defendant because he did not want to turn his back towards the other passenger. He then, as was his practice, asked defendant to "step out of the car" or "exit the car" for reasons of his own safety[1] and in order to separate the two passengers during questioning on the driver's identity.

As defendant alighted from the car, he threw to the ground two plastic baggies believed to contain crack cocaine. Defendant was immediately arrested and taken to the police station where he was strip searched during booking. The search disclosed several additional baggies, one of which contained crack cocaine and three others a white residue.

## DISCUSSION

 The sole question on appeal is whether Officer Albin was justified in asking defendant to get out of the car. The officer conceded that he had no suspicion that defendant, a rear seat passenger, had engaged in any criminal activity and, as noted, had no reason to believe defendant was armed or dangerous. Defendant argues, accordingly, that the request was improper and constituted an unlawful detention.

 Our standard of review of a Fourth Amendment claim involves a two step process: The trial court's factual findings, when supported by

---

[1] Officer Albin had no reason to believe that defendant was armed or dangerous.

substantial evidence, are binding on appeal; but, as a reviewing court, we must independently determine whether, on the facts found, the search (or detention) was reasonable within the meaning of the Constitution. (*People* v. *Leyba* (1981) 29 Cal.3d 591, 596-597 [174 Cal.Rptr. 867, 629 P.2d 961].) And where, as here, the evidence is uncontradicted, no factual issue exists requiring review under the substantial evidence standard, and we measure the facts against constitutional standards as pure questions of law. (*People* v. *Aldridge* (1984) 35 Cal.3d 473, 477 [198 Cal.Rptr. 538, 674 P.2d 240].) In so doing, we apply principles of federal constitutional law to determine the validity of the challenged detention. (*In re Lance W.* (1985) 37 Cal.3d 873, 886-888 [210 Cal.Rptr. 631, 694 P.2d 744].)

In the seminal case of *Pennsylvania* v. *Mimms* (1977) 434 U.S. 106 [54 L.Ed.2d 331, 98 S.Ct. 330], the United States Supreme Court held the police could order the *driver* of a lawfully detained vehicle out of the car without an articulable suspicion that criminal activity was afoot or that the occupants of the vehicle posed a threat to police safety. (434 U.S. at p. 108 [54 L.Ed.2d at p. 335].) The court reached its determination after balancing the de minimis intrusion upon the driver's liberty against the legitimate concerns for officer safety. (434 U.S. at pp. 108-111 [54 L.Ed.2d at pp. 335-337].)

The question left unresolved by *Mimms* is whether the same rule applies equally to passengers.

Defendant underscores the emphasis in *Mimms* to the fact that the driver was *already* lawfully detained in reaching the question there as whether the "*incremental* intrusion" resulting from the request to get out of the car was reasonable. (434 U.S. at p. 109 [54 L.Ed.2d at p. 336], italics added; see also p. 111, fn. 6 [54 L.Ed.2d at p. 337].) Thus, defendant argues, unlike the driver of a lawfully stopped vehicle, a passenger is *not* under detention, and the police must have independent cause to detain in order to justify a demand that the passenger alight.

The People counter there is no significant difference between the status of a driver or passenger with respect to the officer's safety. In fact, it is argued, a passenger may pose an even *greater* danger because the officer cannot safely observe the passenger while interviewing the driver. Accordingly, the People urge this court to extend the rule announced in *Mimms* to authorize the police to routinely require any occupants of a lawfully stopped vehicle, including passengers, to alight from the vehicle.

First, we reject defendant's argument that the level of suspicion or cause to order a passenger to alight is the same as that necessary for a temporary

detention. Nor do we believe, as suggested by the People, that it is necessary or desirable to fashion a "bright-line" rule uniformly applicable to all vehicle stops. As will appear, we think each case must be examined on its own peculiar facts for a determination whether the police conduct was constitutionally justified.

California courts have long recognized that a police officer may ask a driver or a passenger to get out of a vehicle in an appropriate case. In *People v. Superior Court (Simon)* (1972) 7 Cal.3d 186 [101 Cal.Rptr. 837, 496 P.2d 1205], the court held the police may not routinely *search* a motorist stopped for a traffic violation to look for weapons without specific articulable facts furnishing grounds for the officer to believe the motorist may be armed. But the court openly cautioned that it did not mean "to cast doubt on the use by the police, when appropriate, of other precautionary measures which constitute a lesser intrusion than a pat-down search, such as directing the suspect to alight from his car or to keep his hands in sight." (7 Cal.3d at p. 206, fn. 13; see also *People v. Mickelson* (1963) 59 Cal.2d 448, 450 [30 Cal.Rptr. 18, 380 P.2d 658] [if circumstances warrant, police officer may request a suspect to alight from automobile for safety reasons].)

Shortly thereafter, in *People v. Beal* (1974) 44 Cal.App.3d 216 [118 Cal.Rptr. 272], the appellate court identified two sets of "appropriate circumstances" for ordering a passenger out of the car: 1) to enable the officer to pursue his investigation, or 2) to insure the officer's safety. In *Beal,* having first observed two men stagger to their vehicle, the police stopped the car after it had proceeded a block and a half to determine whether the occupants were intoxicated. The reviewing court expressly held that the officer was justified in ordering the passenger (appellant) out of the lawfully stopped car in order to verify his sobriety and to insure the officer's own safety. "Since the purpose of the stop was 'to ascertain if these people were intoxicated,' it was permissible to ask the occupants to alight in order to view their condition. [Citations.] [¶] Furthermore, it has been held proper to request the occupants to alight in order to insure the safety of the officer. [Citations.] Officer Nustad testified that when he asked appellant to get out of the vehicle he feared for his own safety because 'I was wondering what was stuck underneath the seat . . . .' [] [E]ven an inchoate and unparticularized suspicion that it would be better for the officer's safety for the passenger to alight is sufficient to justify such a request, because merely stepping out of the vehicle is a minimal intrusion upon privacy, far less than involved in a bodily search, a frisk, or a search of the vehicle. (*People v. Superior Court (Simon), supra; People v. Superior Court (Kiefer)* [1970] [3 Cal.3d 807] at p. 830.) The officer's request that appellant alight from the vehicle was perfectly reasonable and proper." (44 Cal.App.3d at pp. 220-221; see also *People v. Remiro* (1979) 89 Cal.App.3d 809, 829 [153

Cal.Rptr. 89, 2 A.L.R.4th 1135] [driver and passenger suspected of burglary].)

More recently, this court (Div. Three) reiterated that a legitimate concern for officer safety provides sufficient justification for asking a passenger to get out of a car stopped for traffic violations. (*People* v. *Padilla* (1982) 132 Cal.App.3d 555, 557-558 [183 Cal.Rptr. 97] [passenger kept his hands in his pockets and fidgeted nervously].)

Courts of other jurisdictions have generally followed a similar analytical approach, adopting a test of reasonableness justifying the officer's instruction that the passenger alight. (*People* v. *McLaurin* (1987) 70 N.Y.2d 779 [515 N.E.2d 904] [late hour; abandoned area; slow-moving, unlighted car]; *United States* v. *Hardnett* (6th Cir. 1986) 804 F.2d 353 [reasonable suspicion that occupants of car were armed]; *State* v. *Willis* (Minn. 1982) 320 N.W.2d 726, 728 [furtive gestures by passenger and observation of rubber face mask on floor]; *People* v. *Bradi* (1982) 107 Ill.App.3d 594 [437 N.E.2d 1285] [driver gave false identification; officer saw partially concealed champagne bottle]; *State* v. *Williams* (Fla.App. 1979) 371 So.2d 1074, cert. den. (Fla. 1980) 381 So.2d 771 [citizen hearsay report of a gun in the car]; *State* v. *Collins* (1978) 38 N.C.App. 617 [248 S.E.2d 405] [officers observed open liquor bottles at passenger's feet].)

Neither party has cited, nor has our independent research disclosed, any decision in which the court has extended the *Mimms* rationale upholding the officer's authority to order a passenger to exit a lawfully stopped vehicle without *any* articulable justification. To the contrary, some language appears suggesting the necessity of a threshold level of suspicion focused on the passenger. (*People* v. *Marin* (1981) 80 App.Div.2d 541 [436 N.Y.S.2d 292] ["the passengers may not be ordered out absent some suspicion directed at them," but no improper conduct because the passenger got out without an order]; *State* v. *Williams* (La. 1978) 366 So.2d 1369 [*Mimms* not applicable to passengers; individualized reasons required; dictum: routine intrusion violates Louisiana constitutional right of privacy].)

The case bearing the closest factual resemblance is *State* v. *Ferrise* (Minn. 1978) 269 N.W.2d 888. There, the court found the officer's conduct in ordering the passenger out of the car to be reasonable where the driver had no identification and the officer "wanted to see if the passenger could aid [the police] in accurately identifying the driver so a license check could be made."[2] (*Id.,* at p. 891.)

---

[2] The *Ferrise* court also suggested by way of dictum that the *Mimms* analysis would apply equally to passengers. (269 N.W.2d at pp. 890-891.) However, in a subsequently decided case, the same court qualified its endorsement of the earlier dictum and chose, instead, to

In the case before us, Officer Albin articulated a similar reason for wanting defendant out of the car: namely, to pursue his inquiry in an attempt to learn the identity of a driver of a car without license plates, who was unable to produce any identification or vehicle registration. Such a routine official investigation, conducted in a manner so as to assure independent reliability, was eminently reasonable under the circumstances shown.

Moreover, the challenged order or request to alight was justified on another wholly independent basis: a legitimate concern for the officer's personal safety. To recapitulate, upon effecting the early morning stop of a vehicle containing three occupants, the officer was faced with the prospect of interviewing the two passengers in an effort to establish the identity of the driver. His decision to separate them for his own protection, while closely observing defendant as he rummaged through his pockets for identification, was amply justified and reasonable under the circumstances presented. No improper constitutional encroachment occurred as claimed.

We conclude that the minimal intrusion on defendant's liberty was fully justified both by the officer's concern for his safety and the palpable necessities of effectively carrying out his official duties. **(3)** (See fn. 3.) In view of our determination, we need not discuss the remaining arguments raised in the briefs.[3]

The judgment is affirmed.

Holmdahl, J., and Stein, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 30, 1989. Mosk, J., was of the opinion that the petition should be granted.

---

uphold the police conduct under a standard of reasonableness: "Given the time, place and the circumstances, Officer Steffen clearly was justified in ordering the passengers out in order to get them away from what might well be a weapon under the seat." (*State* v. *Willis, supra,* 320 N.W.2d at p. 728.)

[3] However, we note in passsing that *People* v. *Spicer* (1984) 157 Cal.App.3d 213 [203 Cal.Rptr. 599], relied upon by defendant, is factually distinguishable. In *Spicer,* the court upheld the magistrate's vacated order of suppression on the basis of an illegal detention of the passenger-defendant who had been peremptorily—and without explanation—ordered to produce her driver's license. The court reasoned that because defendant had no realistic choice to ignore the demand or to leave the scene, the "close encounter" constituted an unlawful detention. Here, in contrast, the mere request to exit the vehicle, under the specific circumstances shown, did not amount to a detention within the meaning of the Fourth Amendment. (*People* v. *Harris* (1986) 184 Cal.App.3d 1319, 1322 [229 Cal.Rptr. 400].)