[No. 56042-1. En Banc. March 15, 1990.]

THE STATE OF WASHINGTON, *Petitioner*, v. RODNEY A. MENNEGAR, *Respondent*.

*Seth R. Dawson, Prosecuting Attorney,* and *Seth Aaron Fine, Deputy,* for petitioner.

*Royce Ferguson,* for respondent.

*Thomas C. Phelan* and *Mark W. Muenster* on behalf of Washington Association of Criminal Defense Lawyers, amici curiae for respondent.

ANDERSEN, J.—

FACTS OF CASE

This is a review of an order of the Superior Court for Snohomish County suppressing evidence (drugs) found on the defendant's person during a search made following defendant's arrest pursuant to a valid arrest warrant. The defendant's position is that the existence of the outstanding warrant was discovered while he was being illegally detained by a police officer. The Prosecuting Attorney for Snohomish County seeks review of a divided opinion of the Court of Appeals which affirmed the suppression order.[1] We reverse.

On October 11, 1986, the defendant, Rodney A. Mennegar (hereafter referred to as the passenger) was riding in a car driven by one Christopher Stewart. A City of Brier police officer stopped Stewart for speeding. Stewart got out of the car, gave the officer a fictitious name and told him that he (Stewart) had no driver's license or identification. The officer smelled alcohol on Stewart's breath and decided he was under the influence of intoxicating liquor and should not drive. The officer asked Stewart if he would prefer to have his car impounded or driven by the passenger. Stewart replied that Mennegar, the passenger, could drive.

The officer testified that while he was talking with the driver (and still the only officer at the scene) the passenger jumped out of the car and began screaming, groaning loudly and holding his stomach. The driver, Stewart, then said "I

---

[1]*State v. Mennegar,* 53 Wn. App. 257, 766 P.2d 491 (1989).

have to get him to the hospital". The officer testified that for his own protection he asked the passenger to please get back in the car. The officer further testified that the vehicle had not been pulled off to the side of the road and was still standing in the street. At the suppression hearing, the passenger denied screaming but did testify that the officer had told him to get back in the car. The trial court did not mention the screaming in the findings entered following the suppression hearing.

The trial court found that the officer did ask the passenger if he would drive Stewart's vehicle and that the passenger agreed to do so. That court also found as a fact that the officer asked the passenger if he had a valid driver's license because the officer would not allow an invalidly licensed or unlicensed driver to drive the intoxicated driver's automobile. The passenger handed a Washington driver's license to the officer. When the officer went back to his patrol car and ran a check on the passenger's driver's license, he discovered an outstanding warrant for the passenger's arrest. It is not clear from the appellate record, or from the trial court's oral and written findings, whether the officer retained the driver's license in his possession when he returned to his police car to do a computer check on the name given by Stewart and the name on the passenger's driver's license. It is also unclear from the record whether a warrant check is a separate inquiry from a check to determine if a driver's license is valid and not suspended.

When the officer learned of the outstanding arrest warrant for the passenger, he arrested and searched the passenger, Mennegar. The search revealed 13.3 grams of cocaine in the passenger's possession. The passenger, Mennegar, was later charged with possession of a controlled substance. He moved to suppress the evidence, *i.e.*, the cocaine found on his person, claiming that his arrest on the warrant was invalid because the officer had lacked authority to request his driver's license.

At the suppression hearing, the trial court found as a fact that the officer had only asked the passenger for his driver's

license in order to determine if he would be allowed to drive the intoxicated driver's car from the scene. The trial court also found that the passenger was "free to leave and not in custody" until the officer discovered the outstanding arrest warrant. Nevertheless, that court granted the motion to suppress, reasoning that an officer cannot ask a passenger for his driver's license unless there is reason to suspect him of criminal activity.

In a split decision, the Court of Appeals concluded that the passenger was not in fact "free to leave" when the officer asked him for his driver's license, that the officer did not have authority to ask him for his license and that his "continued coerced presence" at the scene tainted the arrest of the passenger made pursuant to the outstanding warrant for his arrest. *State v. Mennegar,* 53 Wn. App. 257, 766 P.2d 491 (1989). The dissent was of the view that the majority opinion directly conflicted with this court's decision in *State v. Rothenberger,* 73 Wn.2d 596, 440 P.2d 184 (1968) and erroneously extended the exclusionary rule to prevent an arrest made pursuant to a valid outstanding arrest warrant.

The prosecuting attorney argues that there was no arrest or illegal detention of the passenger prior to the officer's discovery of the outstanding arrest warrant. He further argues that even if the defendant had been improperly detained, the detention would not taint an arrest (and the search incident to that arrest) on an otherwise valid outstanding arrest warrant. Since we conclude that there was no arrest or illegal seizure prior to the time the officer discovered the existence of the outstanding arrest warrant for the passenger, we need not reach the prosecutor's second argument or further address *Rothenberger.*

One issue is determinative of this appeal.

## ISSUE

Can a police officer, who has validly stopped a driver for speeding and determined him to be too intoxicated to be permitted to resume driving, ask a passenger in the stopped

vehicle if he wishes to drive the vehicle from the scene, then request to see the passenger's driver's license and run a computer check to determine if the passenger should be allowed to drive the intoxicated driver's vehicle?

## DECISION

CONCLUSION. As part of a police officer's "community caretaking function", an officer may ask a passenger if the passenger wishes to drive an intoxicated driver's vehicle from the scene. If the passenger consents, the officer may appropriately determine if the passenger has a valid driver's license prior to allowing the passenger to drive the intoxicated driver's vehicle. Such an encounter is consensual in nature and does not constitute a "seizure" of the passenger.

There is no question but that the officer's original stop of the vehicle was entirely legal. The vehicle was stopped for speeding and the driver very properly was not allowed to resume driving when it was discovered that he was under the influence of intoxicants.

The trial court made the following "Court's Conclusion as to Disputed Facts" in its suppression order presented at the CrR 3.6 hearing:

> That the officer's request of defendant for a driver's license was for the purpose of defendant driving [the intoxicated driver]'s vehicle from the scene. The officer asked [the intoxicated driver] if he would like his vehicle impounded or driven by defendant. [The intoxicated driver] said defendant could drive his vehicle. The officer then asked defendant if he would drive [the intoxicated driver]'s vehicle and defendant agreed to do so. The officer asked defendant if he had a valid driver's license, because the officer would not allow an invalidly licensed or unlicensed driver to drive [the intoxicated driver]'s vehicle. The officer believed that defendant was free to refuse this request. If defendant had refused to provide driver's license the officer would only have refused to allow defendant to drive the vehicle. Further, defendant was free to leave and not in custody at this point.
>
> Until the officer learned defendant had outstanding warrants, defendant was not in custody and was free to leave.

■ While the findings of a trial court following a suppression hearing are of great significance to a reviewing

310

court, the constitutional rights at issue require an appellate court to make an independent evaluation of the evidence.[2] With regard to credibility issues, deference will, of course, be given to the trial court which had the opportunity to evaluate the demeanor of the witness.[3] In evaluating the evidence, the Court of Appeals concluded that the trial court was in error in finding that the defendant was not in custody and was free to leave until the officer learned there was an outstanding warrant for his arrest. We disagree.

■ Not every encounter between a citizen and a police officer rises to the stature of a seizure. By simply engaging a person in conversation, an officer does not thereby "seize" that person.[4] Nor is there a seizure where the conversation between citizen and officer is freely and voluntarily conducted.[5] In the present case, the consensual encounter between the officer and the defendant did not implicate Fourth Amendment interests.

■ While merely requesting identification, without more, does not constitute a seizure;[6] a seizure may occur when the circumstances surrounding the encounter demonstrate that a reasonable person would believe he or she was not free to leave.[7] Whether a reasonable person would

---

[2]*State v. Daugherty*, 94 Wn.2d 263, 616 P.2d 649 (1980), *cert. denied*, 450 U.S. 958 (1981); *State v. Rogers*, 44 Wn. App. 510, 722 P.2d 1349 (1986).

[3]*In re Bugai*, 35 Wn. App. 761, 765, 669 P.2d 903 (1983); *Rogers*, 44 Wn. App. at 515.

[4]*State v. Belanger*, 36 Wn. App. 818, 677 P.2d 781 (1984); *Florida v. Rodriquez*, 469 U.S. 1, 83 L. Ed. 2d 165, 105 S. Ct. 308 (1984); *United States v. Mendenhall*, 446 U.S. 544, 64 L. Ed. 2d 497, 100 S. Ct. 1870 (1980).

[5]*Belanger*, 36 Wn. App. at 821.

[6]*State v. Machado*, 54 Wn. App. 771, 775 P.2d 997 (1989).

[7]*State v. Sweet*, 44 Wn. App. 226, 232, 721 P.2d 560 (1986), *review denied*, 107 Wn.2d 1001 (1986); *State v. Aranguren*, 42 Wn. App. 452, 455, 711 P.2d 1096 (1985) (citing *Immigration & Naturalization Serv. v. Delgado*, 466 U.S. 210, 216, 80 L. Ed. 2d 247, 104 S. Ct. 1758 (1984)); *Mendenhall*, 446 U.S. at 554.

believe he or she has been detained depends upon the objective facts surrounding the encounter.[8]

We must therefore consider whether under the circumstances of this case the passenger would have reasonably believed he was detained. The police officer testified that while he was talking with the intoxicated driver, and still the only officer at the scene, the passenger got out of the car and began screaming, groaning and holding his stomach. The officer testified he told the passenger to get back in the vehicle and that he so instructed him in order to complete his contact with the intoxicated driver. While the defendant did deny screaming, he agrees that the officer did tell him to get back into the vehicle. The trial court did not resolve the factual dispute as to whether the passenger was carrying on by groaning and screaming. Although we could remand to the trial court for this finding, we consider it unnecessary, given all the facts of this case, and particularly given the detailed findings of fact that the trial court carefully made.

The prosecuting attorney argues that for the officer's own safety, it is within an officer's prerogative to ask a stopped driver's disruptive companion to return to the vehicle while the officer is engaged in an encounter with an intoxicated driver. While we have recognized that an officer may be endangered by a suspect's companion,[9] we need not consider this issue and do not do so absent a factual finding by the trier of fact as to the passenger's alleged disruptive or threatening behavior.

We need not remand for a finding as to the passenger's behavior because even assuming the passenger was asked or told to get back in the vehicle, a reasonable person in the passenger's position would not have believed himself or herself detained. The trial court so found and we agree. Here, the passenger was not simply asked or told to return

[8]*Mendenhall*, 446 U.S. at 554.

[9]*State v. Kennedy*, 107 Wn.2d 1, 11, 726 P.2d 445 (1986).

to the vehicle. In addition, as the trial court found, the passenger was asked if he would be willing to drive the intoxicated driver's vehicle from the scene and responded that he would be willing to do so. Further, the officer testified that he told the apparently intoxicated driver and passenger that they could walk but that he would not allow the driver to resume driving the vehicle. This supports the trial court's finding that the passenger was not in custody and was free to leave until the officer discovered the existence of the outstanding arrest warrant against him. That being so, a reasonable person in the passenger's position would not have concluded that he or she was being detained or arrested.

The issue then becomes whether it was reasonable for the officer to request to see the passenger's driver's license prior to allowing him to drive the vehicle. The defendant relies upon *State v. Larson*, 93 Wn.2d 638, 611 P.2d 771 (1980), wherein this court held that a police stop based on a parking violation committed by the driver does not reasonably provide an officer with grounds to require identification of passengers unless other circumstances give the police independent cause to question them. *Larson* is clearly distinguishable from the present case. In *Larson*, the officer had no reason to request identification from the passenger. In this case, the officer did not require the passenger to produce identification, rather, he asked him to produce a driver's license in order to determine if he was a licensed driver to whom he could reasonably entrust the intoxicated driver's vehicle. The officer was not conducting a criminal investigation, he was seeking alternatives to impounding the vehicle. In *State v. Malbeck*, 15 Wn. App. 871, 552 P.2d 1092 (1976), for example, the Court of Appeals concluded that one valid ground for the officer's decision to impound a driver's vehicle was that the passenger possessed an invalid driver's license.

It was thus entirely appropriate for the officer to explore alternatives to impounding the intoxicated driver's vehi-

cle.[10] This court has held that a vehicle may be impounded as part of a police officer's "community caretaking function" under certain circumstances.[11] When the officer asked the passenger in this case if he would be willing to drive his companion's vehicle, the officer was engaging in an interaction which was conducted for noncriminal noninvestigatory purposes. The officer was simply trying to find a qualified driver so that it would not be necessary to impound the intoxicated driver's vehicle.

The question then becomes whether it was reasonable and legal for the officer to request the passenger's driver's license and check to insure that the license was valid before turning the intoxicated driver's vehicle over to the passenger. Whether such an encounter, made for noncriminal noninvestigatory purposes, is reasonable depends upon a balancing of the individual's interest in freedom from police interference against the public's interest in having the police perform a "community caretaking function".[12] When the officer asked the passenger for his driver's license, the passenger was free to refuse. He also was free to refuse the invitation to drive his intoxicated companion's vehicle. The passenger did neither.

The trial court found as a fact that if the defendant had refused to provide his driver's license, the officer would only have refused to allow him to drive the vehicle. In agreeing to drive and in voluntarily handing over his driver's license, the passenger was neither seized nor detained. As previously pointed out, there is no "seizure" where a conversation between an officer and citizen is freely and voluntarily conducted.[13] While engaged in an attempt to find an alternative to impounding the vehicle, the officer was acting

---

[10]*State v. Houser,* 95 Wn.2d 143, 622 P.2d 1218 (1980).

[11]*State v. Williams,* 102 Wn.2d 733, 689 P.2d 1065 (1984).

[12]*State v. Chisholm,* 39 Wn. App. 864, 867, 696 P.2d 41 (1985).

[13]*Belanger,* 36 Wn. App. at 821.

within his proper caretaking function in checking to see if the passenger's driver's license was still valid. The conversation between the officer and passenger was freely entered into and the response to the request for the license was voluntary and consensual; hence, it did not constitute a seizure.[14]

Once the officer discovered the existence of an outstanding arrest warrant, the officer was clearly and properly performing his duty by arresting the passenger. The contraband was discovered during the search incident to a valid arrest. A reasonable search of an arrestee's person is justified by the fact of his lawful arrest.[15] The search and seizure were lawful.

The trial court and the Court of Appeals are reversed; the order to suppress is vacated; and the case is remanded to the Superior Court for trial.

CALLOW, C.J., UTTER, BRACHTENBACH, DOLLIVER, DORE, DURHAM, and SMITH, JJ., and CONE, J. Pro Tem., concur.

---

[14]*Belanger*, 36 Wn. App. at 821.

[15]*State v. McIntosh*, 42 Wn. App. 573, 712 P.2d 319, *review denied*, 105 Wn.2d 1015 (1986); *State v. Garcia*, 35 Wn. App. 174, 665 P.2d 1381, *review denied*, 100 Wn.2d 1019 (1983).