279 N.J. Super. 39 (1995)
652 A.2d 195
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
TOMMIE C. ALSTON, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted December 12, 1994.
Decided January 12, 1995.
*40 Before Judges PETRELLA, HAVEY and CUFF.
John F. Fahy, Bergen County Prosecutor, attorney for appellant (John J. Scaliti, Assistant Prosecutor, of counsel and on the letter-briefs).
*41 Susan L. Reisner, Public Defender of New Jersey, attorney for respondent (George Mettler, Designated Counsel, on the brief).
The opinion of the court was delivered by HAVEY, J.A.D.
The State appeals, by leave granted, from an order suppressing evidence seized from a vehicle operated by defendant, Tommie C. Alston. The issue is whether the arresting police officer's order to the passengers to alight from the vehicle is constitutionally valid. We conclude that it was and therefore reverse and remand for further proceedings.
Defendant and co-defendant Isiah Howard, were charged with possession of over one-half ounce of cocaine with intent to distribute, N.J.S.A. 2C:35-5a(1) and N.J.S.A. 2C:35-5b(2), and possession of cocaine, N.J.S.A. 2C:35-10a(1).
According to the proofs at defendant's motion to suppress,[1] at approximately 3:30 p.m., Palisades Park Police Officer Richard Sopelsa observed a 1985 Nissan exiting Route 46 at the Route 1 and 9 exit ramp. Officer Sopelsa testified that the vehicle was making a left-hand turn from the right lane of the ramp. The officer stated that the lane change was very dangerous because there was heavy traffic where the exit ramp meets Route 46. Officer Sopelsa thereupon activated his vehicle's overhead lights and, by loud speaker, requested that the vehicle's driver stop and exit the vehicle with his license, registration and insurance card. The driver, defendant, complied. A license check revealed that defendant's license had been revoked. Officer Sopelsa thereupon placed defendant under arrest for driving while on the revoked list.
Upon defendant's arrest, Officer Sopelsa informed the three passengers in the vehicle to exit. He did so because it was his *42 intention to have the vehicle impounded. He stated that it was his department's policy to impound the vehicle in all driving while revoked cases until the driver deposits $500 cash bail.
When the front-seat passenger, T.E. (defendant's seventeen-year old son) alighted from the vehicle, Officer Sopelsa observed an open brown paper bag containing a large number of vials with plastic purple tops. The officer testified that "[w]hen I approached the car, this bag was open and I could see right down as if the bag was here, and I could look into the car and walk right up to the car and see the vials." He stated that based on his experience he had seen "thousands ... of these [vials] filled with crack...." The officer also observed in plain view a folded tinfoil packet on the floor of the driver's side of the vehicle. The tinfoil contained a white substance which the officer believed to be cocaine. Subsequent tests by the State Police determined that the package contained .51 grams of cocaine. He also observed a plastic bag containing what appeared to be cocaine in the back of the car. According to the officer, the bag looked as if the passengers in the rear seat had "attempted to put it under the seat, but they couldn't get it under the seat." Defendant, co-defendant Howard and the other passengers were thereupon placed under arrest.
On cross-examination, Officer Sopelsa acknowledged that he observed no "furtive" movements by the occupants of the vehicle prior to its stop. He also admitted that when he placed defendant under arrest, he felt "[n]o threat at the time." He simply asked the passengers to exit because of his department's impoundment policy.
The motion judge suppressed the evidence seized from defendant's car, concluding that the officer's reason for requiring the passengers to alight from the vehicle, to impound it, was not legally sustainable. He also found that the drugs in the vehicle would not have been in plain view "but for the fact ... of the frontseat passenger getting out of the car...." Finding that State v. Smith, 134 N.J. 599, 637 A.2d 158 (1994), "makes it very *43 clear that you cannot just ask the [passengers] out[,]" the judge concluded that absent some heightened suspicion of danger, Officer Sopelsa's conduct was not constitutionally permissible.
Preliminarily, there is no issue concerning Officer Sopelsa's initial stop of defendant's vehicle. The officer had a reasonable basis to stop the vehicle when it made an unlawful left turn from the right lane of the Route 9 exit ramp. N.J.S.A. 39:4-123. See State v. Williamson, 138 N.J. 302, 304, 650 A.2d 348 (N.J. 1994) (State need only prove that police had reasonable and articulable suspicion that defendant violated motor vehicle statute, not that it could convict defendant of the offense); see also Delaware v. Prouse, 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660, 673 (1979); State v. Casimono, 250 N.J. Super. 173, 178-79, 593 A.2d 827 (App.Div. 1991), certif. denied, 127 N.J. 558, 606 A.2d 370, cert. denied, ___ U.S. ___, 112 S.Ct. 1978, 118 L.Ed.2d 577 (1992); State v. Murphy, 238 N.J. Super. 546, 554, 570 A.2d 451 (App.Div. 1990). The narrow question before us is whether the officer's order to the passengers to exit the vehicle is sustainable.
We begin with the recognition that Officer Sopelsa's justification for ordering the passengers to exit the vehicle, his intention to impound it, is not sustainable. Given the option of locking the vehicle and leaving it, or having another licensee, with defendant's consent, drive it from the scene, impoundment was not justified. See State v. Slockbower, 79 N.J. 1, 12, 397 A.2d 1050 (1979); State v. McDaniel, 156 N.J. Super. 347, 356-57, 383 A.2d 1174 (App.Div. 1978). The State concedes as much.
However, the proper inquiry for determining the constitutionality of a search and seizure is "whether the conduct of the law enforcement officer who undertook the search was objectively reasonable, without regard to his or her underlying motives or intent." State v. Kennedy, 247 N.J. Super. 21, 27, 588 A.2d 834 (App.Div. 1991). See also, State v. Bruzzese, 94 N.J. 210, 219-21, 463 A.2d 320 (1983), cert. denied, 465 U.S. 1030, 104 S.Ct. 1295, 79 L.Ed.2d 695 (1984). Hence, "the fact that the arresting officer perhaps did not harbor the state of mind hypothecated by the *44 reasons which provide the legal justification for his conduct does not vitiate the constitutional efficacy of the action taken." State v. Malik, 221 N.J. Super. 114, 120, 534 A.2d 27 (App.Div. 1987) (officer's mistaken belief that urine specimen was required in all cases involving drug arrests did not vitiate constitutional validity of a seizure based on exigent circumstances and also reasonably incidental to a valid arrest). Accord Delaware v. Prouse, 440 U.S. at 654, 99 S.Ct. at 1396, 59 L.Ed.2d at 668 ("reasonableness standard usually requires, at a minimum, that the facts upon which an intrusion is based be capable of measurement against `an objective standard'").
We also agree with the motion judge that there was no justification for requiring the passengers to exit the vehicle based on any danger to the officer. In Pennsylvania v. Mimms, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), the Court determined that even though the police observed no unusual or suspicious movement prior to a vehicle stop, the State's interest in the safety of the officers far outweighed the de minimis intrusion in requiring the driver to step out of the car after it had been stopped for a traffic violation. Id. at 111, 98 S.Ct. at 333, 54 L.Ed.2d at 337. Our Supreme Court in Smith, concluded that the Mimms test, as applied to drivers, satisfied article I, paragraph 7 of the New Jersey Constitution, as well as the Fourth Amendment. 134 N.J. at 610-11, 637 A.2d 158. However, the Court held that to support an order to a passenger to alight from a vehicle stopped for a traffic violation:
the officer need point only to some fact or facts in the totality of the circumstances that would create in an police officer a heightened awareness of danger that would warrant an objectively reasonable officer in securing the scene in a more effective manner by ordering the passenger to alight from the car.
[Id. at 618, 637 A.2d 158.]
The Court reached that conclusion by balancing the concern for a police officer's safety against the intrusion into the passenger's liberty:
Because the passenger has not engaged in culpable conduct, the passenger has a legitimate expectation that no further inconvenience will be occasioned by any *45 intrusions beyond the delay caused by the lawful stop. The intrusion on the passenger's privacy, therefore, is greater than it is on the driver's privacy.
[Id. at 615, 637 A.2d 158.]
Nevertheless, Smith's ultimate holding is that the per se rule under Mimms should not be applied "automatically" to passengers. Id. at 617, 637 A.2d 158. We do not read the opinion as precluding the ordering of a passenger to exit the vehicle for other legitimate reasons, in the absence of the requisite "heightened awareness of danger." Id. at 618, 637 A.2d 158.
We are satisfied that an objectively reasonable police officer in the present circumstance could have ordered the passengers from defendant's vehicle as part of the officer's "community caretaking function." Professor LaFave in his treatise notes that:
As the Supreme Court correctly noted in Cady v. Dombrowski, [413 U.S. 433, 441, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706, 715 (1973)], local police often have occasion to deal with vehicles in the performance of functions "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute."
[3 Wayne R. LaFave, Search and Seizure § 7.4(f) (2d ed. 1987).]
For example, we held in State v. Martinez, 260 N.J. Super. 75, 78, 615 A.2d 279 (App.Div. 1992), that a police officer's stop of defendant's automobile was objectively reasonable based on his "community caretaking" function when the vehicle was being driven ten miles per hour in a twenty-five mile per hour zone at 2 a.m., causing a reasonable police officer to believe "something might be wrong with the car ... [or] with its driver"; accord State v. Goetaski, 209 N.J. Super. 362, 365, 507 A.2d 751 (App.Div.), certif. denied, 104 N.J. 458, 517 A.2d 443 (1986) (police could stop vehicle traveling slowly on shoulder of rural highway in fifty mile per hour zone with left-turn indicator flashing to inquire whether "something was wrong").
Here, the arresting officer would not be concerned that "something was wrong"; he would focus on what to do with defendant's vehicle after citing defendant with driving while on the revoked list. Unlike the driver in Smith, who was stopped initially only for speeding, 134 N.J. at 604, 637 A.2d 158, here defendant could not drive his vehicle from the scene in view of his revoked status. It *46 was therefore appropriate for an arresting officer to take reasonable steps to secure the vehicle and its contents. In such a case, the objectively reasonable officer would logically have requested the passengers to exit the vehicle.
Alternatively, the officer could reasonably have asked whether any of the passengers were willing to drive the vehicle from the scene. See Slockbower, 79 N.J. at 10, 397 A.2d 1050 (a passenger's removal of a vehicle from arrest scene recognized as a rational alternative to police intervention in assuming custody of the vehicle). This approach would have avoided potential traffic problems on heavily traveled Route 46 or damage to defendant's vehicle which would have otherwise been left unattended. In our view, a reasonable officer, as part of his inquiry, would have ordered the passengers out of the vehicle, first to facilitate a check of the passengers' driving credentials, and second to satisfy the officer that the passengers were physically capable of operating the vehicle. This cautionary step was particularly warranted in the present instance because at least one of the passengers was a juvenile. Balancing this minimal intrusion against the officer's good-faith efforts to minimize public inconvenience and potential harm to an unattended vehicle, we are convinced that the order to exit the vehicle for such purposes would be constitutionally valid.
Out-of-state courts have reached a similar result in slightly different settings. For example, in People v. Maxwell, 206 Cal. App.3d 1004, 254 Cal. Rptr. 124 (1988), the California Court of Appeals found a police officer's conduct in ordering the passengers out of a car without license plates reasonable where the driver had no identification and the officer wanted to determine if the passengers could aid in identifying the driver. The court reasoned that the officer's conduct was "eminently reasonable" in order to assure "independent reliability" of the driver's identification. Id., 254 Cal. Rptr. at 128. See also, State v. Ferrise, 269 N.W.2d 888, 891 (Minn. 1978) (ordering passenger out of car reasonable where driver had no identification and officer "wanted to see if the *47 passenger could aid [the officer] in accurately identifying the driver so a license check could be made").
Similarly, in State v. Mennegar, 114 Wash.2d 304, 787 P.2d 1347 (1990), the Washington Supreme Court held that as part of a police officer's "community caretaking function" he may ask a passenger in an intoxicated driver's vehicle if the passenger wished to drive the vehicle from the scene, id., 787 P.2d at 1349, request to see the passenger's driving credentials, and thereafter perform a license check to confirm that the license was not revoked. Id. at 1350. The Court reasoned that these minimal intrusions were not for the purpose of conducting a criminal investigation, but were simply the exercise of the officer's community caretaking function in "trying to find a qualified driver so that it would not be necessary to impound the intoxicated driver's vehicle." Id. at 1351.
There is no conceptual difference between the conduct of the police officers in Maxwell and Mennegar and what a reasonable officer could have demanded here. Ordering the passengers out of a vehicle to determine whether they have valid licenses and were capable of driving the vehicle from the scene is no more intrusive than requiring a passenger to exit the vehicle for the purpose of aiding in the identification of the driver. We therefore conclude that Officer Sopelsa's conduct was objectively reasonable. We stress, however, that our holding is confined to those unique circumstances when the driver is physically or legally unable to operate the vehicle.
Once the passengers alighted from the vehicle, the vials of cocaine and other contraband were in Officer Sopelsa's plain view. The motion judge so found. Seizure of the drugs was therefore constitutionally permissible. See Bruzzese, 94 N.J. at 238-39, 463 A.2d 320; State v. Foley, 218 N.J. Super. 210, 215, 527 A.2d 482 (App.Div. 1987); State v. Moller, 196 N.J. Super. 511, 514-15, 483 A.2d 433 (App.Div. 1984).
Reversed and remanded for further proceedings.
NOTES
[1] Co-defendant Howard's motion to suppress the evidence was denied by a different judge by order dated October 4, 1993.