IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 32152-5-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| WILLIAM ALLEN CRAM, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Following a stipulated facts trial, William Allen Cram was convicted of unlawful possession of heroin and methamphetamine and one count of possession of a legend drug without a prescription. On appeal, he contends the trial court erred in denying his motion to suppress evidence obtained from an unlawful search. Mr. Cram raises the same issue in his pro se statement of additional grounds for review (SAG). Finding no error, we affirm.

FACTS

The material facts are not disputed. At the suppression hearing, Officer Tim Eikum testified that during the early morning of June 17, 2012, he responded to a report of a suspicious vehicle parked at Little Street Southwest and South Second Avenue

Southwest in Tumwater, Washington. Dispatch told the officer that the car in question was a Saturn and the sole occupant was a female who was sleeping in the front passenger seat. Dispatch also advised that the registered owner of the Saturn had an arrest warrant for theft. Officer Eikum was aware that the area was known for thefts, narcotics activities, and burglaries.

Officer Eikum testified that when he arrived at the location, he parked behind the Saturn and turned on his spotlight to illuminate the interior of the car. He did not have his emergency lights or siren activated. Officer Eikum saw two males and one female in the car. A second officer arrived about the same time and parked behind Officer Eikum's patrol car. Officer Eikum then approached the driver's side window and asked the driver for his name. The driver identified himself as Gregory Beckford and stated that he lived at a nearby apartment complex. He explained that he was sitting inside the car with his friends because he was not allowed to have overnight guests at the apartment. During this questioning, the second officer was standing on the passenger side of the car.

Officer Eikum then asked the second male, who was sitting behind the driver, for his name and birthday. The man identified himself as "William Crum" and gave a birth date of January 7, 1977. Report of Proceedings (Aug. 13, 2012) (RP) at 5. Dispatch could not find a record with that information and Officer Eikum thought the person

2

looked older than the birth date provided. When asked again, the passenger stated his birthday was January 7, 1968. Dispatch informed Officer Eikum that it found a record for a William Cram with a birthday of January 7, 1963. According to dispatch, Mr. Cram had an outstanding felony warrant. When informed of this report, Mr. Cram admitted his true name and birthday.

While waiting for dispatch to confirm the warrant, Officer Eikum told Mr. Cram to get out of the car and handcuffed him. The warrant was quickly confirmed and Officer Eikum arrested Mr. Cram. During a search incident to arrest, Officer Eikum found two pills of sulfamethoxazole, a prescription drug, in Mr. Cram's coat pocket. After transporting Mr. Cram to the jail, Officer Eikum also found heroin and methamphetamine in the backseat of his patrol car where Mr. Cram had been sitting.

The State charged Mr. Cram with two counts of possession of a controlled substance, heroin and methamphetamine, and one count of possession of a legend drug without a prescription.

Mr. Cram filed a CrR 3.6 motion to suppress, arguing that Officer Eikum's actions in parking behind the Saturn, shining a spotlight on the car, and approaching the car and asking for Mr. Cram's name and birthday, viewed cumulatively, constituted an impermissible seizure. He argued, "once an officer pulls his marked patrol vehicle

3

behind the parked vehicle and illuminates the entire vehicle, approaches that vehicle

while the entire vehicle continues to be illuminated, is joined by another police officer

who is on the other side of the vehicle following up on information that's taken from that

police officer, no reasonable person would feel free to get up and walk out of that

vehicle." RP at 25.

The court denied the motion to suppress, concluding as follows:

3.2    The presence of a second officer (Officer Driver) is not sufficient to support a finding that Mr. Cram was seized.

3.3    The use of a spotlight to illuminate the vehicle is not sufficient to support a finding that Mr. Cram was seized.

3.4    Based on the totality of the circumstances, Mr. Cram was not seized at the time that Officer Eikum asked Mr. Cram for his name and date of birth.

3.5    Mr. Cram was not seized until the point that he was detained in handcuffs, after Mr. Cram had stated that he was William A. Cram and had provided the last four digits of his social security number. At that point, Officer Eikum had grounds to detain Mr. Cram while awaiting confirmation of the warrant.

Clerk's Papers at 58. The court then concluded that Mr. Cram was validly searched

incident to arrest. Mr. Cram was convicted as charged after a trial upon stipulated facts.

## ANALYSIS

Mr. Cram contends that he was unlawfully seized under the Fourth Amendment to

the United States Constitution and article I, section 7 of the Washington Constitution.

Mr. Cram contends that after the officer parked behind the car Mr. Cram occupied,

4

showed his spotlight through the rear window, and, especially once the second officer arrived, a reasonable person would not feel free to leave or terminate the encounter.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." Article I, section 7 of the Washington Constitution states that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." Article I, section 7 places greater emphasis on the right to privacy than the Fourth Amendment. *State v. Young*, 123 Wn.2d 173, 179, 867 P.2d 593 (1994).

A warrantless seizure is per se unreasonable under the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution unless one of the exceptions to the warrant requirement applies. *State v. Williams*, 102 Wn.2d 733, 736, 689 P.2d 1065 (1984). Therefore, we first determine whether a seizure occurred and then determine if a warrant exception justified that seizure. *Terry v. Ohio*, 392 U.S. 1, 19, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *State v. Mote*, 129 Wn. App. 276, 283, 120 P.3d 596 (2005). If Officer Eikum unconstitutionally seized Mr. Cram before his arrest, the exclusionary rule calls for suppression of the evidence. *State v. Harrington*, 167 Wn.2d 656, 664, 222 P.3d 92 (2009).

5

When reviewing the denial of a suppression motion, we determine whether substantial evidence supports the findings of fact and then determine whether the findings support the conclusions of law. *State v. Dempsey*, 88 Wn. App. 918, 921, 947 P.2d 265 (1997). "Whether police have seized a person is a mixed question of law and fact." *Harrington*, 167 Wn.2d at 662. The trial court's factual findings are entitled to great deference, but whether those facts ultimately constitute a seizure is a question of law that this court reviews de novo. *State v. Thorn*, 129 Wn.2d 347, 351, 917 P.2d 108 (1996), *overruled on other grounds by State v. O'Neill*, 148 Wn.2d 564, 62 P.3d 489 (2003).

Mr. Cram does not assign error to the facts related to the events prior to Officer Eikum's approaching the car and questioning the driver. We, therefore, accept those findings of fact as verities on appeal. *State v. Hill*, 123 Wn.2d 641, 647, 870 P.2d 313 (1994). However, Mr. Cram assigns error to findings of fact 2.9, 2.11, 2.12, 2.13, 2,14, 2.15, 2.16, and 2.18, which involve Officer Eikum's questioning of Mr. Cram. In his challenge to these findings, Mr. Cram contends that the trial court erred to the extent it suggested "that the seizure of the defendant occurred only after he gave the officer identifying information, where the seizure of the defendant occurred prior to that." Br. of Appellant at 1-2.

The challenged findings make no such suggestion. They simply recite Officer Eikum's unchallenged testimony at the suppression hearing in which he stated that (1) he asked Mr. Cram for his name and birthday, (2) Mr. Cram initially provided an inaccurate name and birthday, (3) dispatch had no record of the name provided by Mr. Cram, (4) Mr. Cram then provided different identifying information, (5) dispatch subsequently reported that Mr. Cram had a warrant, and (6) while waiting for confirmation of the warrant, Officer Eikum asked Mr. Cram to step out of the car and handcuffed him.

Mr. Cram's assignments of error essentially amount to a challenge to the legal significance of these facts, i.e., whether they constitute a seizure, not a challenge to the facts themselves. As such, we note the court's findings accurately reflect Officer Eikum's account of the circumstances surrounding the encounter and, therefore, accept the court's findings as supported by substantial evidence. Thus, we turn to whether the totality of these facts constitutes a seizure.

Under the federal and state constitutions, a seizure occurs when, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he or she was not free to leave due to the law enforcement officer's use of force or display of authority. *State v. Young*, 135 Wn.2d 498, 510, 957 P.2d 681 (1998) (quoting *State v. Stroud*, 30 Wn. App. 392, 394-95, 634 P.2d 316 (1981)). The officer's subjective

7

motivation is not germane. Rather, the standard is "a purely objective one, looking to the actions of the law enforcement officer." *Young,* 135 Wn.2d at 501. The defendant bears the burden of proving a seizure occurred. *Harrington,* 167 Wn.2d at 664.

Not every encounter between a police officer and a citizen constitutes a seizure. *State v. Armenta,* 134 Wn.2d 1, 10, 948 P.2d 1280 (1997) (quoting *State v. Aranguren,* 42 Wn. App. 452, 455, 711 P.2d 1096 (1985)). Under Washington law, officers may request identification, including date of birth, and check for outstanding warrants during a social contact. *Armenta,* 134 Wn.2d at 11. "[P]olice questioning relating to one's identity, or a request for identification by the police, without more, is unlikely to result in a seizure." *State v. Hansen,* 99 Wn. App. 575, 578, 994 P.2d 855 (2000). In *O'Neill,* 148 Wn.2d at 576-77, our Supreme Court noted its view of policing:

> Citizens of this state expect police officers to do more than react to crimes that have already occurred. They also expect the police to investigate when circumstances are suspicious, to interact with citizens to keep informed about what is happening in a neighborhood, and to be available for citizens' questions, comments, and information citizens may offer.
> Accordingly, we reject the premise that under article I, section 7 a police officer cannot question an individual or ask for identification because the officer subjectively suspects the possibility of criminal activity, but does not have a suspicion rising to the level to justify a *Terry* stop.

Thus, a police officer has not seized a person by merely approaching him in a public place and asking him questions as long as the individual need not answer and feels

8

free to walk away. *State v. Mennegar*, 114 Wn.2d 304, 310, 787 P.2d 1347 (1990).

Circumstances that can indicate a seizure include

the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.

*United States v. Mendenhall*, 466 U.S. 544, 554-55, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980). "In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person." *Id.* at 555.

None of the *Mendenhall* factors are present here. Two officers were present and neither displayed a weapon or touched Mr. Cram. Neither of them used a commanding tone of voice to compel compliance. Mr. Cram contends that the presence of the second officer constituted a show of authority such that a reasonable person would not feel free to leave. Here, nothing in the record suggests that the second officer engaged the passengers at any time or that there was any team interrogation. Two Washington cases have discussed the presence of two officers. In *Harrington*, the presence of a second officer who stood seven or eight feet from Mr. Harrington did not constitute a seizure. *Harrington*, 167 Wn.2d at 669-70. The Supreme Court emphasized that ordering Mr. Harrington to remove his hands from his pockets turned the social contact into a seizure,

9

not the presence of a second officer. And in *Hansen*, the court impliedly ruled that the presence of two officers does not create a seizure. *Hansen*, 99 Wn. App. 575.

*O'Neill* supports our analysis. In that case, a police officer saw a car parked in front of a store that had been closed for about one hour. *O'Neill*, 148 Wn.2d at 571. The officer knew the store had been burglarized twice in the previous month. He pulled up behind the suspect car and activated his spotlight to check the license plate. He learned the car had been impounded within the last two months due to a drug situation. The officer approached the driver's side of the car and shined his flashlight in the driver's face, and asked the driver to roll down the window. *Id.* at 572. The officer then asked the driver, later identified as Mr. O'Neill, what he was doing and for identification. Mr. O'Neill responded that he did not have any identification and that the car would not start.

In holding that the officer's initial contact was not a seizure, the court pointed out that illumination by a spotlight or flashlight, without additional indicia of authority, was not an unreasonable intrusion. *Id.* at 578. As support, the *O'Neill* court cited its decision in *Young* where it held that no seizure took place when an officer shined a spotlight on a person in a public street at night since "[t]he use of a flashlight to illuminate at night what is plainly visible during the day is not an unconstitutional intrusion into a citizen's privacy interests." *Id.*

The court also noted it was not improper for the officer to engage Mr. O'Neill in conversation in the store's parking lot. On this point, the court stated, "[t]he occupant of a car does not have the same expectation of privacy in a vehicle parked in a public place as he or she might have in a vehicle in a private location—he or she is visible and accessible to anyone approaching." *Id.* at 579. Finally, the court rejected Mr. O'Neill's contention that the request for identification constituted a seizure, adhering to its previous analysis in *Young* that such a request does not elevate an encounter into a detention. *O'Neill*, 148 Wn.2d at 580 (quoting *Young*, 135 Wn.2d at 511).

Similarly here, Officer Eikum pulled in behind a car parked in a public space. He illuminated the interior of the car with his spotlight, approached the car, and asked Mr. Cram for identifying information. Mr. Cram contends that Officer Eikum's use of a spotlight materially distinguishes this case from *O'Neill* where the officer used a flashlight to illuminate the interior of the car. We see no reason to distinguish the use of a spotlight to illuminate from the use of a flashlight to illuminate. The spotlight, like a flashlight, simply revealed "what was already in plain view." *Young*, 135 Wn.2d at 513.

Viewed in their totality, the circumstances in this case would not lead a reasonable person to believe that he or she was not free to leave. Accordingly, the encounter with Officer Eikum did not rise to the level of a seizure. The trial court did not err in denying

Mr. Cram's motion to suppress.

In his SAG, Mr. Cram addresses the same issue raised and argued by defense counsel on appeal, contending that the circumstances of the encounter would not lead a reasonable person to believe he or she was free to leave. He emphasizes that Officer Eikum parked behind the Saturn and shined a spotlight on it, illuminating the entire car and its occupants. He writes, "A citazen is not a judge or lawyer and in my opinion 99% of citazens would feel seized in the same curcomstances." SAG at 1. We have addressed this argument and do not need to reconsider arguments raised and argued by defense counsel on appeal. RAP 10.10(a).

We affirm.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____
Korsmo, J.

_____
Fearing, A.C.J.

12

Renee S. Townsley
Clerk/Administrator

(509) 456-3082
TDD #1-800-833-6388

# The Court of Appeals
## of the
## State of Washington
### Division III



500 N Cedar ST
Spokane, WA 99201-1905

Fax (509) 456-4288
http://www.courts.wa.gov/courts

April 24, 2014

Carol L. La Verne
Thurston County Prosecutor's Office
2000 Lakeridge Dr SW Bldg 2
Olympia, WA   98502-6045
Lavernc@co.thurston.wa.us

Peter B. Tiller
The Tiller Law Firm
PO Box 58
Centralia, WA   98531-0058
ptiller@tillerlaw.com

CASE # 321525
State of Washington v. William Allen Cram
THURSTON COUNTY SUPERIOR COURT No. 121007997

Counsel:

Enclosed please find a copy of the opinion filed by the Court today.

A party need not file a motion for reconsideration as a prerequisite to discretionary review by the Supreme Court. RAP 13.3(b); 13.4(a). If a motion for reconsideration is filed, it should state with particularity the points of law or fact which the moving party contends the court has overlooked or misapprehended, together with a brief argument on the points raised. RAP 12.4(c). Motions for reconsideration which merely reargue the case should not be filed.

Motions for reconsideration, if any, must be filed within twenty (20) days after the filing of the opinion. Please file an original and two copies of the motion. If no motion for reconsideration is filed, any petition for review to the Supreme Court must be filed in this court within thirty (30) days after the filing of this opinion (may be filed by electronic facsimile transmission). The motion for reconsideration and petition for review must be received (not mailed) on or before the dates they are due. RAP 18.5(c).

Sincerely,

Renee S. Townsley
Clerk/Administrator

RST:pb
Enc.

c:     **E-mail**—Hon. Gary Tabor

DO NOT CITE. SEE GR 14.1(a).

Court of Appeals Division III
State of Washington

Opinion Information Sheet

Docket Number: 32152-5
Title of Case:    State Of Washington V. William Allen Cram
File Date:        04/24/2014

SOURCE OF APPEAL
----------------

Appeal from Thurston Superior Court
Docket No:    12-1-00799-7
Judgment or order under review
Date filed:    09/14/2012
Judge signing: Honorable Gary R Tabor

JUDGES
------

Authored by Robert E. Lawrence-Berrey
Concurring: George B. Fearing
            Kevin M. Korsmo

COUNSEL OF RECORD
-----------------

Counsel for Appellant(s)
        Peter B. Tiller
        The Tiller Law Firm
        Po Box 58
        Centralia, WA, 98531-0058

Counsel for Respondent(s)
        Carol L. La Verne
        Thurston County Prosecutor's Office
        2000 Lakeridge Dr Sw Bldg 2
        Olympia, WA, 98502-6045

# OPINION FACT SHEET

Case Name:     State v. Cram
Case Number:   321525

1.     TRIAL COURT INFORMATION:

    A. SUPERIOR COURT:     Thurston
                                     Judgment; Gary Tabor; 9/14/12

2.     COURT OF APPEALS INFORMATION:
Disposition:
(X)     Affirmed
( )     Affirmed as Modified
( )     Affirmed in Part/Remanded**
( )     Affirmed/Reversed-in part and Remanded**
( )     Affirmed/Vacated in part
( )     Affirmed/Reversed in part
( )     Denied (PRP, Motions, Petitions)
( )     Dismissed
( )     Granted/Denied in part
( )     Granted (PRP, Motions, Petitions)
( )     Other
( )     Reversed and Dismissed
( )     Remanded**
( )     Remanded with Instructions**
( )     Reversed in part
( )     Reversed and Remanded**
( )     Reversed
( )     Reversed, Vacated and Remanded**
( )     Vacated and Remanded**
\*      These categories are established by the Supreme Court
\*\*     If remanded, is jurisdiction being retained by the Court
       of Appeals?  ()     YES
                    ()     NO

## 3. SUPERIOR COURT INFORMATION:
### (IF THIS IS A CRIMINAL CASE, CHECK ONE)

**Is further action required by the superior court?**
**()     YES**
**(X)    NO**

                              *RvB*
                  **Authoring Judge's Initials**