[No. 14814-9-III.    Division Three.    December 31, 1996.]

THE STATE OF WASHINGTON, *Appellant*, v. GARY
MARTIN LYNCH, *Respondent*.

*James R. Sweetser, Prosecuting Attorney*, and *Kevin M. Korsmo, Deputy*, for appellant.

*Frank V. Bartoletta* and *Sanger & Bartoletta*; and *Gwenna R. Wootress*, for respondent.

MUNSON, J. — RCW 69.50.505 permits the seizure and forfeiture of property that is used to facilitate a violation of the Uniform Controlled Substances Act, RCW 69.50, or proceeds from a violation. In this case, we are asked to decide whether such a forfeiture is "punishment" for the purpose of the double jeopardy provisions of the federal and state constitutions, and therefore bars the subsequent prosecution of Gary M. Lynch for possession of cocaine.[1] We hold it is not and affirm Mr. Lynch's conviction.

On the night of March 9, 1994, Mr. Lynch parked his 1989 Chevrolet Astro van on a street near the Ridpath hotel. At around 9 p.m., a Ridpath employee observed several youths breaking into the vehicle. She called the police, and Officer Eric Olsen of the Spokane Police Department responded.

[1]The Eighth Amendment, excessive fines clause, to the United States Constitution is not raised in the appeal.

Officer Olsen checked the van, which had "Spokane Punchboard" painted on the side of it, and found the sliding door was unlocked. When he opened the door, he saw bags of pull tabs. He testified it appeared the bags had been gone through or ransacked — they were "jumbled all over."

In an attempt to identify the vehicle's owner, Officer Olsen opened the van's front passenger door to look for registration documents. The first thing he saw was a cellular phone on the console with a checkbook visible beneath it. Officer Olsen moved the phone and picked up the checkbook, assuming it belonged to the van's owner and would have a name, address, and telephone number in it. He immediately noticed a baggy of bindles the checkbook had hidden from view. From his police experience, Officer Olsen knew that bindles commonly are used to package cocaine. He field tested the white powder inside one of the bindles and obtained a positive result for that drug.

As Officer Olsen conducted the field test, a man approached him, told him he knew the owner of the van and offered to go get him. In a short time, he returned with Mr. Lynch. Officer Olsen explained that he had entered the vehicle to find the owner's name and had discovered the bindles. He arrested Mr. Lynch, searched him incident to the arrest, and seized another bindle from Mr. Lynch's coat pocket.

The State charged Mr. Lynch with possession of cocaine. The Spokane police chief also instituted an in rem civil proceeding to forfeit the van and other items seized from Mr. Lynch at the time of his arrest. The chief obtained a decree of forfeiture on May 3, 1994, based on a finding the van was used to facilitate the crime of possession. The decree followed a hearing at which Mr. Lynch contested the forfeiture. Mr. Lynch also unsuccessfully moved in the criminal prosecution to suppress the cocaine Officer Olsen

found in the van. He was convicted of possession on October 7, 1994, on stipulated facts.[2]

Mr. Lynch appealed his conviction. While his appeal was pending, he moved the superior court to vacate the judgment and sentence and dismiss the possession charge on the ground the prior forfeiture constituted punishment for the same offense. As such, he argued the subsequent criminal conviction violated the state and federal constitutions' prohibition against double jeopardy. The superior court granted the motion on March 13, 1995. Thereafter, Mr. Lynch's appeal was dismissed, the State appealed the order vacating the conviction, and Mr. Lynch cross-appealed the court's denial of his motion to suppress.

## THE STATE'S APPEAL

The statute under which the Spokane police chief obtained these forfeitures is RCW 69.50.505. It generally provides for the forfeiture of property used to facilitate the sale, delivery, or receipt of controlled substances, or of property that is the proceeds of such activity. RCW 69.50.505(a)(1)-(8). Subsection (b) of the statute sets forth the procedure for forfeitures. Seizure of property is by warrant or it may be without process if incident to an arrest or a search under a search warrant. RCW 69.50-.505(b)(1). The law enforcement agency that seizes the property must give the property owner and those with an interest therein notice of intent to forfeit within 15 days. RCW 69.50.505(c). If no person appears to contest the forfeiture, the property seized is deemed forfeited. RCW 69.50.505(d).[3] Otherwise, a hearing is held before the chief law enforcement officer of the seizing agency or his or her designee. The burden of producing evidence is upon the person claiming the property. RCW 69.50.505(e). (For

---

[2]As a result of the conviction, Mr. Lynch also lost his license to act as a distributor's representative, an authorized gambling activity.

[3]*See also State v. Cole*, 128 Wn.2d 262, 282 n.15, 906 P.2d 925 (1995), in which the court observed that if the defendant had simply defaulted in the forfeiture proceeding, he would not have had a viable double jeopardy claim.

the full text of RCW 69.50.505, *see* Appendix A to this opinion.)

In *United States v. Ursery*, 518 U.S. 267, 116 S. Ct. 2135, 135 L. Ed. 2d 549 (1996), the United States Supreme Court held that "*in rem* civil forfeitures [under 21 U.S.C.A. § 881 (West 1996) and 18 U.S.C.A. § 981 (West 1996)[4]] are neither 'punishment' nor criminal for purposes of the Double Jeopardy Clause." (For full text of 21 U.S.C.A. § 881, see Appendix B to this opinion.) *Ursery*, 116 S. Ct. at 2149. The court specifically reaffirmed *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 104 S. Ct. 1099, 79 L. Ed. 2d 361 (1984), and applied the two-part inquiry contained there: One, did the Congress intend the forfeiture statute to be criminal or civil? Two, are the proceedings so punitive in fact as to persuade the Court the forfeiture proceeding is criminal in nature, despite congressional intent? *Ursery*, 116 S. Ct. at 2147.[5]

With regard to the first inquiry, the Court reiterated that in rem proceedings, which target the property and not the owner, have traditionally been civil proceedings. *Ursery*, 116 S. Ct. at 2147. As evidence Congress intended the forfeitures to be civil proceedings, the Court cited the procedural mechanisms provided for in the laws: actual notice is unnecessary when the government cannot identify an interested party, a summary administrative proceeding can dispose of the action if no party files a claim, and the burden of proof shifts to the claimant once

---

[4]21 U.S.C.A. § 881 (West Supp. 1996) is substantially similar to Washington's drug forfeiture law, RCW 69.50.505.

[5]The court distinguished earlier cases the circuit courts of appeal had relied upon in holding forfeiture was punishment and therefore violated the prohibition against double jeopardy: "[*United States v.*] *Halper*[, 490 U.S. 435, 109 S. Ct. 1892, 104 L. Ed. 2d 487 (1989)] dealt with *in personam* civil penalties under the Double Jeopardy Clause; [*Department of Revenue v.*] *Kurth Ranch*[, 511 U.S. 767, 114 S. Ct. 1937, 128 L. Ed. 2d 767 (1994)] with a tax proceeding under the Double Jeopardy Clause; and *Austin* [*v. United States*, 509 U.S. 602, 113 S. Ct. 2801, 125 L. Ed. 2d 488 (1993)] with civil forfeitures under the Excessive Fines Clause." *Ursery*, 116 S. Ct. at 2147. The court concluded that "[n]one of those cases dealt with the subject of this case: *in rem* civil forfeitures for purposes of the Double Jeopardy Clause." *Ursery*, 116 S. Ct. at 2147.

the government has shown probable cause for forfeiture. *Ursery*, 116 S. Ct. at 2147-48.

With regard to the second inquiry, *89 Firearms*, 465 U.S. at 365, stated that " ' "[o]nly the clearest proof" ' " that the purpose and effect of the forfeiture are punitive will suffice to override Congress' manifest preference for a civil sanction." *Ursery*, 116 S. Ct. at 2148, concluded the forfeiture proceedings under the two federal statutes are not "so punitive in form and effect as to render them criminal despite Congress' intent to the contrary." The "most significant" reason was the statutes' nonpunitive goals — to encourage property owners to take care in managing their property so as not to permit it to be used for an illegal purpose, and to ensure that persons do not profit from their illegal acts. *Ursery*, 116 S. Ct. at 2148-49. The Court also considered the fact the statutes do not require scienter. While it recognized both statutes have innocent owner exceptions, it held more was required to show Congress' intent was to punish. Further, although deterrence is one purpose of the statutes, that purpose serves both remedial and punitive goals. *Ursery*, 116 S. Ct. at 2149.[6]

*Ursery* is binding with respect to Mr. Lynch's double jeopardy rights under the federal constitution. The remaining question is whether our state constitution's prohibition against double jeopardy is more protective. Specifically, is there a legitimate rationale for interpreting our double jeopardy provision as more protective than the federal provision, insofar as it relates to whether a proceeding is punishment? As of this writing, only one Washington case has decided that issue.[7] Division Two of the Washington Court of Appeals in *Tellevik v. Real Prop-*

---

[6]Justice Kennedy, concurring at 2150, also examined the "punishment" issue. He observed the civil in rem forfeiture was not part of the punishment for the criminal offense. Any property holder who cannot claim statutory innocence risks forfeiture, whether or not he or she has committed criminal acts.

[7]As of September 1, 1996, five other states have filed opinions citing *Ursery* and holding their own state constitutions provide no greater protection than that provided under the federal provision. *See People v. Four Thousand Four Hundred Thirteen Dollars*, 55 Cal. Rptr. 2d 831, 47 Cal. App. 4th 1631 (1996); *People v. Ratliff*, 282 Ill. App. 3d 707, 669 N.E.2d 122 (1996); *State v. $3,000.00 in*

*erty Known as 6717 100th St. S.W.*, 83 Wn. App. 366, 371, 921 P.2d 1088 (1996) held that "the state double jeopardy clause offers no more protection than the federal one." It cited as authority the Washington Supreme Court's opinion in *State v. Gocken*, 127 Wn.2d 95, 896 P.2d 1267 (1995).[8]

■ In *Gocken*, the court held, in a six-person majority, that our state constitution's double jeopardy provision is no more protective than the federal provision, *insofar as it concerns the question of whether two prosecutions are for the "same offense."*[9] At issue there was whether this state should follow the United States Supreme Court's reversal of its position taken in *Grady v. Corbin*, 495 U.S. 508, 110 S. Ct. 2084, 109 L. Ed. 2d 548 (1990). *See United States v. Dixon*, 509 U.S. 688, 113 S. Ct. 2849, 2856, 125 L. Ed. 2d 556 (1993), which overruled *Grady*. *Grady* applied the broader "same conduct" test for determining whether the second prosecution was for the same offense. *Dixon* reversed and held the "same elements" test (as set forth in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 182, 76 L. Ed. 306 (1932)) was the proper test for that determination.

*Gocken* applied the *Gunwall*[10] criteria in analyzing

*U.S. Currency*, 292 N.J. Super. 205, 678 A.2d 741 (1996); *Blessing v. State*, 927 S.W.2d 310 (Tx. Ct. App. 1996); *State v. Greene*, 473 S.E.2d 921 (W.Va. 1996).

[8]Division One of the Washington Court of Appeals recently applied *Ursery* to a double jeopardy claim brought under the Fifth Amendment in an unpublished opinion. *State v. Mann*, No. 36358-1-I (Wash. Ct. App., Sept. 16, 1996). The state constitution was not at issue.

[9]This holding does not mandate a holding here that the provisions are coextensive insofar as they relate to what is considered "punishment." "[E]ven though a particular state constitutional provision might afford broader protection than federal law in some applications, it may not in others." *Malyon v. Pierce County*, 79 Wn. App. 452, 466, 903 P.2d 475 (1995) (citing *Bedford v. Sugarman*, 112 Wn.2d 500, 507, 772 P.2d 486 (1989)), *review granted*, 129 Wn.2d 1004 (1996).

[10]*State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986). The court considered the following subjects: (1) The textual language of the state constitution; (2) Significant differences in the texts of parallel provisions of the federal and state constitutions; (3) State constitutional and common law history; (4) Preexisting state law; (5) Differences in structure between the federal and state constitutions; and (6) Matters of particular state interest or local concern.

whether our state constitution is more protective and requires application of the broader "same conduct" test to determine if a later prosecution is for the same offense. *Gocken* concluded the *Gunwall* factors did not support a holding the state provided greater protection than that found in the federal double jeopardy provision. Hence, it interpreted the state provision the same as the United States Supreme Court interpreted the federal provision in *Dixon*. Specifically, the "same elements" test applies in determining whether successive prosecutions violate Const. art. I, § 9. *Gocken*, 127 Wn.2d at 107.

Of the *Gunwall* factors, only "preexisting state law" provides a point to distinguish the court's analysis in *Gocken* from the issue presented here. *Gocken* cited early Washington case law that utilized the "same elements" test. That precedent supported *Gocken's* holding that the state constitution is no more protective than the Fifth Amendment with regard to what charges constitute the same offense. But, it is not determinative of the question of whether the state constitution is more protective as to what constitutes "punishment."

■ The factor, preexisting state law, focuses on the level of protection this state has historically provided the interest in question. *See State v. Audley*, 77 Wn. App. 897, 904, 894 P.2d 1359 (1995). In *Audley*, the defendant contended the state constitution protected against warrantless strip searches. The court observed there was no preexisting state law on the issue. However, the court considered as analogous a case which concerned a statute that permitted the warrantless, nonconsensual extraction of blood from a person arrested for driving under the influence of intoxicants. *State v. Curran*, 116 Wn.2d 174, 804 P.2d 558 (1991). *Curran* held the statute did not violate the state constitution. The court relied upon the fact the test was a reasonable test, conducted in a reasonable manner, and the officers had "clear indication" the test would reveal the presence of intoxicants in amounts in excess of what was safe for driving. Moreover, in reaching this conclu-

sion, *Curran* used federal case law in its analysis of the state constitutional issue. Hence, the court in *Audley* characterized *Curran* as supporting an argument the state constitution should be interpreted coextensively with the Fourth Amendment in the context at issue there. *Audley*, 77 Wn. App. at 904-05. *See also State v. Wittenbarger*, 124 Wn.2d 467, 480-81, 880 P.2d 517 (1994).

We have not found Washington case law or statutory authority relevant to whether forfeiture is punishment under our state's double jeopardy provision.[11] Absent "preexisting state law" which supports a broader interpretation of "punishment," we adopt an interpretation consistent with *Ursery*. In setting forth the criteria for consideration of state constitutional arguments, *Gunwall* started by acknowledging the importance of federal authority in the area of constitutional law. Specifically, " '[t]he opinions of the [United States] Supreme Court, while not controlling on state courts . . . are . . . important guides on the subjects which they squarely address.' " *State v. Gunwall*, 106 Wn.2d 54, 60-61, 720 P.2d 808, 76 A.L.R.4th 517 (1986) (quoting *State v. Hunt*, 91 N.J. 338, 363, 450 A.2d 952 (1982) (Handler, J., concurring)); *see also Malyon v. Pierce County*, 79 Wn. App. 452, 465, 903 P.2d 475 (1995), *review granted*, 129 Wn.2d 1004 (1996). Here, the cases (*Halper*, etc.), which several United States Courts of Appeal relied upon in holding the forfeitures were punishment, have been disapproved by *Ursery* as precedent for double jeopardy purposes. Absent some other authority that the forfeitures are punishment, we have nothing to base an opinion holding the Washington constitution is more protective.

For the same reasons cited in *Ursery* in reviewing a statute substantially similar to our drug forfeiture law, the

---

[11]The only prior case that dealt with the punishment issue is *State v. Clark*, 124 Wn.2d 90, 875 P.2d 613 (1994). In that pre-*Ursery* opinion, our Supreme Court held that forfeiture constituted punishment under the federal double jeopardy clause. It declined to decide whether it also constituted punishment under the State's provision, because the parties did not make a timely *Gunwall* analysis.

forfeiture here does not constitute "punishment" for double jeopardy purposes. The Legislature did not intend forfeiture to be a criminal penalty, nor is the forfeiture proceeding so punitive that it cannot be viewed as civil in nature, despite the legislative intent. We therefore reverse the trial court's vacation of judgment and sentence.

## MR. LYNCH'S CROSS APPEAL

Mr. Lynch contends Officer Olsen did not act reasonably when he entered Mr. Lynch's vehicle to look for documents identifying the owner. Other less intrusive means of identifying the owner existed. First, Officer Olsen could have obtained the owner's name through a computer check, then contacted him to determine whether he wanted the police to secure the van. Second, the vehicle also had "Spokane Punchboard" painted on the side, but Officer Olsen did not attempt to call that business because of the lateness of the evening. Either approach would have been less intrusive than entering the van itself.

■ The courts have recognized that police officers acting in their "community caretaking function" sometimes perform services in addition to enforcement of the penal laws. When an officer makes a reasonable and good faith search in the course of such a service, evidence of a crime he or she discovers during that search arguably is admissible. *See State v. Hutchison*, 56 Wn. App. 863, 866, 785 P.2d 1154 (1990). In citizen-police encounters initiated for "noncriminal noninvestigatory purposes," the question of admissibility of evidence gained thereby is determined by "balancing of the individual's interest in freedom from police interference against the public's interest in having the police perform a 'community caretaking function.'" *State v. Mennegar*, 114 Wn.2d 304, 313, 787 P.2d 1347 (1990). "[I]f 'an officer has probable cause to believe that a vehicle has been the subject of burglary, tampering, or theft, he may make a limited entry and investigation, without a search warrant, of those areas he reasonably

believes to have been affected and of those areas he reasonably believes might contain evidence of ownership.' " 3 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 7.4(e) at 568 (1996) (quoting MODEL RULES FOR LAW ENFORCEMENT, SEARCHES, SEIZURES AND INVENTORIES OF MOTOR VEHICLES, rule 302(A) (1974)).

In *People v. Gale*, 9 Cal. 3d 788, 511 P.2d 1204, 108 Cal. Rptr. 852 (1973), the California Supreme Court upheld a search similar to the one here. The court considered the fact the officer could have attempted to find the owner through a radio license check. "However, knowledge acquired through hindsight is an improper gauge by which to judge an officer's actions." *Gale*, 108 Cal. Rptr. at 858. Instead, the court relied upon "the reasonable inference, drawn from the suspicious circumstances preceding [the officer's] entry into the vehicle, that a crime was being, or had been, perpetrated in or about [it]." *Gale*, 108 Cal. Rptr. at 857-58 (footnote omitted). The dissent disagreed, stating it is the driver's responsibility to secure his or her vehicle or risk theft, and passing law enforcement officers should not enter parked cars to lock them.

The facts of our case, even more than those in *Gale*, support the officer's actions. Here, we had an eyewitness to what appeared to be a vehicle prowling of Mr. Lynch's van. In investigating that report, Officer Olsen looked inside for evidence indicating the vehicle had been disturbed. He found pull tabs spread in disarray over the back seat and floor. Hence, Officer Olsen's reaction that the owner should be notified appears reasonable, as does his reaching for the checkbook, an obvious source for identifying the owner. As in *Gale*, the alternative of checking the vehicle's license number is apparent from the advantage of hindsight, but is not necessarily a proper "gauge by which to judge the officer's actions." *Gale*, 108 Cal. Rptr. at 858.

Officer Olsen's search of the van was pursuant to his community caretaking function and was reasonable under the circumstances present in this case. The facts support

an exception to the warrant requirement, and the court properly admitted the cocaine into evidence. We affirm the trial court's denial of Mr. Lynch's motion to suppress.

SWEENEY, C.J., and THOMPSON, J., concur.

## APPENDIX A

**69.50.505 Seizure and forfeiture.** (a) The following are subject to seizure and forfeiture and no property right exists in them:

(1) All controlled substances which have been manufactured, distributed, dispensed, acquired, or possessed in violation of this chapter or chapter 69.41 or 69.52 RCW, and all hazardous chemicals, as defined in RCW 64.44.010, used or intended to be used in the manufacture of controlled substances;

(2) All raw materials, products, and equipment of any kind which are used, or intended for use, in manufacturing, compounding, processing, delivering, importing, or exporting any controlled substance in violation of this chapter or chapter 69.41 or 69.52 RCW;

(3) All property which is used, or intended for use, as a container for property described in paragraphs (1) or (2);

(4) All conveyances, including aircraft, vehicles, or vessels, which are used, or intended for use, in any manner to facilitate the sale, delivery, or receipt of property described in paragraphs (1) or (2), except that:

(i) No conveyance used by any person as a common carrier in the transaction of business as a common carrier is subject to forfeiture under this section unless it appears that the owner or other person in charge of the conveyance is a consenting party or privy to a violation of this chapter or chapter 69.41 or 69.52 RCW;

(ii) No conveyance is subject to forfeiture under this section by reason of any act or omission established by the owner thereof to have been committed or omitted without the owner's knowledge or consent;

(iii) No conveyance is subject to forfeiture under this section if used in the receipt of only an amount of marijuana for which possession constitutes a misdemeanor under RCW 69.50.401 (e);

(iv) A forfeiture of a conveyance encumbered by a bona fide security interest is subject to the interest of the secured party if the secured party neither had knowledge of nor consented to the act or omission; and

(v) When the owner of a conveyance has been arrested under this chapter or chapter 69.41 or 69.52 RCW the conveyance in which the person is arrested may not be subject to forfeiture unless it is seized or process is issued for its seizure within ten days of the owner's arrest;

(5) All books, records, and research products and materials, including formulas, microfilm, tapes, and data which are used, or intended for use, in violation of this chapter or chapter 69.41 or 69.52 RCW;

(6) All drug paraphernalia;

(7) All moneys, negotiable instruments, securities, or other tangible or intangible property of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this chapter or chapter 69.41 or 69.52 RCW, all tangible or intangible personal property, proceeds, or assets acquired in whole or in part with proceeds traceable to an exchange or series of exchanges in violation of this chapter or chapter 69.41 or 69.52 RCW, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this chapter or chapter 69.41 or 69.52 RCW. A forfeiture of money, negotiable instruments, securities, or other tangible or intangible property encumbered by a bona fide security interest is subject to the interest of the secured party if, at the time the security interest was created, the secured party neither had knowledge of nor consented to the act or omission. No personal property may be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission which that owner establishes was committed or omitted without the owner's knowledge or consent; and

(8) All real property, including any right, title, and interest in the whole of any lot or tract of land, and any appurtenances or improvements which are being used with the knowledge of the owner for the manufacturing, compounding, processing, delivery, importing, or exporting of any controlled substance, or which have been acquired in whole or in part with proceeds traceable to an exchange or series of exchanges in violation of this chapter or chapter 69.41 or 69.52 RCW, if such activity is not less than a class C felony and a substantial nexus exists between the commercial production or sale of the controlled substance and the real property. However:

(i) No property may be forfeited pursuant to this subsection, to the extent of the interest of an owner, by reason of any act or omission committed or omitted without the owner's knowledge or consent;

(ii) The bona fide gift of a controlled substance, legend drug, or imitation controlled substance shall not result in the forfeiture of real property;

(iii) The possession of marijuana shall not result in the forfeiture of real property unless the marijuana is possessed for commercial purposes, the amount possessed is five or more plants or one pound or more of marijuana, and a substantial nexus exists between the possession of marijuana and the real property. In such a case, the intent of the offender shall be determined by the preponderance of the evidence, including the offender's prior criminal history, the amount of marijuana possessed by the offender, the sophistication of the activity or equipment used by the offender, and other evidence which demonstrates the offender's intent to engage in commercial activity;

(iv) The unlawful sale of marijuana or a legend drug shall not result in the forfeiture of real property unless the sale was forty grams or more in the case of marijuana or one hundred dollars or more in the case of a legend drug, and a substantial nexus exists between the unlawful sale and the real property; and

(v) A forfeiture of real property encumbered by a bona fide security interest is subject to the interest of the secured party if the secured party, at the time the security interest was created, neither had knowledge of nor consented to the act or omission.

(b) Real or personal property subject to forfeiture under this chapter may be seized by any board inspector or law enforcement officer of this state upon process issued by any superior court having jurisdiction over the property. Seizure of real property shall include the filing of a lis pendens by the seizing agency. Real property seized under this section shall not be transferred or otherwise conveyed until ninety days after seizure or until a judgment of forfeiture is entered, whichever is later: PROVIDED, That real property seized under this section may be transferred or conveyed to any person or entity who acquires title by foreclosure or deed in lieu of foreclosure of a security interest. Seizure of personal property without process may be made if:

(1) The seizure is incident to an arrest or a search under a search warrant or an inspection under an administrative inspection warrant;

(2) The property subject to seizure has been the subject of a prior judgment in favor of the state in a criminal injunction or forfeiture proceeding based upon this chapter;

(3) A board inspector or law enforcement officer has probable cause to believe that the property is directly or indirectly dangerous to health or safety; or

(4) The board inspector or law enforcement officer has probable cause to believe that the property was used or is intended to be used in violation of this chapter.

(c) In the event of seizure pursuant to subsection (b), proceedings for forfeiture shall be deemed commenced by the seizure. The law enforcement agency under whose authority the seizure was made shall cause notice to be served within fifteen days following the seizure on the owner of the property seized and the person in charge

thereof and any person having any known right or interest therein, including any community property interest, of the seizure and intended forfeiture of the seized property. Service of notice of seizure of real property shall be made according to the rules of civil procedure. However, the state may not obtain a default judgment with respect to real property against a party who is served by substituted service absent an affidavit stating that a good faith effort has been made to ascertain if the defaulted party is incarcerated within the state, and that there is no present basis to believe that the party is incarcerated within the state. Notice of seizure in the case of property subject to a security interest that has been perfected by filing a financing statement in accordance with chapter 62A.9 RCW, or a certificate of title, shall be made by service upon the secured party or the secured party's assignee at the address shown on the financing statement or the certificate of title. The notice of seizure in other cases may be served by any method authorized by law or court rule including but not limited to service by certified mail with return receipt requested. Service by mail shall be deemed complete upon mailing within the fifteen day period following the seizure.

(d) If no person notifies the seizing law enforcement agency in writing of the person's claim of ownership or right to possession of items specified in subsection (a)(4), (a)(7), or (a)(8) of this section within forty-five days of the seizure in the case of personal property and ninety days in the case of real property, the item seized shall be deemed forfeited. The community property interest in real property of a person whose spouse committed a violation giving rise to seizure of the real property may not be forfeited if the person did not participate in the violation.

(e) If any person notifies the seizing law enforcement agency in writing of the person's claim of ownership or right to possession of items specified in subsection (a)(2), (a)(3), (a)(4), (a)(5), (a)(6), (a)(7), or (a)(8) of this section within forty-five days of the seizure in the case of personal

property and ninety days in the case of real property, the person or persons shall be afforded a reasonable opportunity to be heard as to the claim or right. The hearing shall be before the chief law enforcement officer of the seizing agency or the chief law enforcement officer's designee, except where the seizing agency is a state agency as defined in RCW 34.12.020(4), the hearing shall be before the chief law enforcement officer of the seizing agency or an administrative law judge appointed under chapter 34.12 RCW, except that any person asserting a claim or right may remove the matter to a court of competent jurisdiction. Removal of any matter involving personal property may only be accomplished according to the rules of civil procedure. The person seeking removal of the matter must serve process against the state, county, political subdivision, or municipality that operates the seizing agency, and any other party of interest, in accordance with RCW 4.28.080 or 4.92.020, within forty-five days after the person seeking removal has notified the seizing law enforcement agency of the person's claim of ownership or right to possession. The court to which the matter is to be removed shall be the district court when the aggregate value of personal property is within the jurisdictional limit set forth in RCW 3.66.020. A hearing before the seizing agency and any appeal therefrom shall be under Title 34 RCW. In a court hearing between two or more claimants to the article or articles involved, the prevailing party shall be entitled to a judgment for costs and reasonable attorney's fees. In cases involving personal property, the burden of producing evidence shall be upon the person claiming to be the lawful owner or the person claiming to have the lawful right to possession of the property. In cases involving real property, the burden of producing evidence shall be upon the law enforcement agency. The burden of proof that the seized real property is subject to forfeiture shall be upon the law enforcement agency. The seizing law enforcement agency shall promptly return the article or articles to the claimant upon a determination by the administrative law judge or court that the claimant is

the present lawful owner or is lawfully entitled to possession thereof of items specified in subsection (a)(2), (a)(3), (a)(4), (a)(5), (a)(6), (a)(7), or (a)(8) of this section.

(f) When property is forfeited under this chapter the board or seizing law enforcement agency may:

(1) Retain it for official use or upon application by any law enforcement agency of this state release such property to such agency for the exclusive use of enforcing the provisions of this chapter;

(2) Sell that which is not required to be destroyed by law and which is not harmful to the public;

(3) Request the appropriate sheriff or director of public safety to take custody of the property and remove it for disposition in accordance with law; or

(4) Forward it to the drug enforcement administration for disposition.

(g)(1) When property is forfeited, the seizing agency shall keep a record indicating the identity of the prior owner, if known, a description of the property, the disposition of the property, the value of the property at the time of seizure, and the amount of proceeds realized from disposition of the property.

(2) Each seizing agency shall retain records of forfeited property for at least seven years.

(3) Each seizing agency shall file a report including a copy of the records of forfeited property with the state treasurer each calendar quarter.

(4) The quarterly report need not include a record of forfeited property that is still being held for use as evidence during the investigation or prosecution of a case or during the appeal from a conviction.

(h)(1) By January 31st of each year, each seizing agency shall remit to the state treasurer an amount equal to ten percent of the net proceeds of any property forfeited during the preceding calendar year. Money remitted shall be deposited in the drug enforcement and education account under RCW 69.50.520.

(2) The net proceeds of forfeited property is the value of the forfeitable interest in the property after deducting the cost of satisfying any bona fide security interest to which the property is subject at the time of seizure; and in the case of sold property, after deducting the cost of sale, including reasonable fees or commissions paid to independent selling agents, and the cost of any valid landlord's claim for damages under subsection (n) of this section.

(3) The value of sold forfeited property is the sale price. The value of retained forfeited property is the fair market value of the property at the time of seizure, determined when possible by reference to an applicable commonly used index, such as the index used by the department of licensing for valuation of motor vehicles. A seizing agency may use, but need not use, an independent qualified appraiser to determine the value of retained property. If an appraiser is used, the value of the property appraised is net of the cost of the appraisal. The value of destroyed property and retained firearms or illegal property is zero.

(i) Forfeited property and net proceeds not required to be paid to the state treasurer shall be retained by the seizing law enforcement agency exclusively for the expansion and improvement of controlled substances related law enforcement activity. Money retained under this section may not be used to supplant preexisting funding sources.

(j) Controlled substances listed in Schedule I, II, III, IV, and V that are possessed, transferred, sold, or offered for sale in violation of this chapter are contraband and shall be seized and summarily forfeited to the state. Controlled substances listed in Schedule I, II, III, IV, and V, which are seized or come into the possession of the board, the owners of which are unknown, are contraband and shall be summarily forfeited to the board.

(k) Species of plants from which controlled substances in Schedules I and II may be derived which have been planted or cultivated in violation of this chapter, or of which the owners or cultivators are unknown, or which are wild growths, may be seized and summarily forfeited to the board.

(l) The failure, upon demand by a board inspector or law enforcement officer, of the person in occupancy or in control of land or premises upon which the species of plants are growing or being stored to produce an appropriate registration or proof that he is the holder thereof constitutes authority for the seizure and forfeiture of the plants.

(m) Upon the entry of an order of forfeiture of real property, the court shall forward a copy of the order to the assessor of the county in which the property is located. Orders for the forfeiture of real property shall be entered by the superior court, subject to court rules. Such an order shall be filed by the seizing agency in the county auditor's records in the county in which the real property is located.

(n) A landlord may assert a claim against proceeds from the sale of assets seized and forfeited under subsection (f)(2) of this section, only if:

(1) A law enforcement officer, while acting in his or her official capacity, directly caused damage to the complaining landlord's property while executing a search of a tenant's residence; and

(2) The landlord has applied any funds remaining in the tenant's deposit, to which the landlord has a right under chapter 59.18 RCW, to cover the damage directly caused by a law enforcement officer prior to asserting a claim under the provisions of this section;

(i) Only if the funds applied under (2) of this subsection are insufficient to satisfy the damage directly caused by a law enforcement officer, may the landlord seek compensation for the damage by filing a claim against the governmental entity under whose authority the law enforcement agency operates within thirty days after the search;

(ii) Only if the governmental entity denies or fails to respond to the landlord's claim within sixty days of the date of filing, may the landlord collect damages under this subsection by filing within thirty days of denial or the expiration of the sixty-day period, whichever occurs first,

a claim with the seizing law enforcement agency. The seizing law enforcement agency must notify the landlord of the status of the claim by the end of the thirty-day period. Nothing in this section requires the claim to be paid by the end of the sixty-day or thirty-day period.

(3) For any claim filed under (2) of this subsection, the law enforcement agency shall pay the claim unless the agency provides substantial proof that the landlord either:

(i) Knew or consented to actions of the tenant in violation of this chapter or chapter 69.41 or 69.52 RCW; or

(ii) Failed to respond to a notification of the illegal activity, provided by a law enforcement agency under RCW 59.18.075, within seven days of receipt of notification of the illegal activity.

(o) The landlord's claim for damages under subsection (n) of this section may not include a claim for loss of business and is limited to:

(1) Damage to tangible property and clean-up costs;

(2) The lesser of the cost of repair or fair market value of the damage directly caused by a law enforcement officer;

(3) The proceeds from the sale of the specific tenant's property seized and forfeited under subsection (f)(2) of this section; and

(4) The proceeds available after the seizing law enforcement agency satisfies any bona fide security interest in the tenant's property and costs related to sale of the tenant's property as provided by subsection (h)(2) of this section.

(p) Subsections (n) and (o) of this section do not limit any other rights a landlord may have against a tenant to collect for damages. However, if a law enforcement agency satisfies a landlord's claim under subsection (n) of this section, the rights the landlord has against the tenant for damages directly caused by a law enforcement officer under the terms of the landlord and tenant's contract are subrogated to the law enforcement agency. [1993 c 487 § 1;

1992 c 211 § 1. Prior: (1992 c 210 § 5 repealed by 1992 c 211 § 2); 1990 c 248 § 2; 1990 c 213 § 12; 1989 c 271 § 212; 1988 c 282 § 2; 1986 c 124 § 9; 1984 c 258 § 333; 1983 c 2 § 15; prior: 1982 c 189 § 6; 1982 c 171 § 1; prior: 1981 c 67 § 32; 1981 c 48 § 3; 1977 ex.s. c 77 § 1; 1971 ex.s. c 308 § 69.50.505.]

## APPENDIX B

21 U.S.C.A. § 881. Forfeitures

(a) Subject property

The following shall be subject to forfeiture to the United States and no property right shall exist in them:

(1) All controlled substances which have been manufactured, distributed, dispensed, or acquired in violation of this subchapter.

(2) All raw materials, products, and equipment of any kind which are used, or intended for use, in manufacturing, compounding, processing, delivering, importing, or exporting any controlled substance in violation of this subchapter.

(3) All property which is used, or intended for use, as a container for property described in paragraph (1), (2), or (9).

(4) All conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of property described in paragraph (1), (2), or (9), except that —

(A) no conveyance used by any person as a common carrier in the transaction of business as a common carrier shall be forfeited under the provisions of this section unless it shall appear that the owner or other person in charge of such conveyance was a consenting party or privy to a violation of this subchapter or subchapter II of this chapter;

(B) no conveyance shall be forfeited under the provisions of this section by reason of any act or omission established by the owner thereof to have been committed or omitted by any person other than such

owner while such conveyance was unlawfully in the possession of a person other than the owner in violation of the criminal laws of the United States, or of any State; and

(C) no conveyance shall be forfeited under this paragraph to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge, consent, or willful blindness of the owner.

(5) All books, records, and research, including formulas, microfilm, tapes, and data which are used, or intended for use, in violation of this subchapter.

(6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter, except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

(7) All real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment, except that no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

(8) All controlled substances which have been possessed in violation of this subchapter.

(9) All listed chemicals, all drug manufacturing equipment, all tableting machines, all encapsulating machines, and all gelatin capsules, which have been

imported, exported, manufactured, possessed, distributed, or intended to be distributed, imported, or exported, in violation of a felony provision of this subchapter or subchapter II of this chapter.

(10) Any drug paraphernalia (as defined in section 857 of this title).

.(11) Any firearm (as defined in section 921 of title 18) used or intended to be used to facilitate the transportation, sale, receipt, possession, or concealment of property described in paragraph (1) or (2) and any proceeds traceable to such property.

(b) Seizure pursuant to Supplemental Rules for Certain Admiralty and Maritime Claims; issuance of warrant authorizing seizure

Any property subject to civil forfeiture to the United States under this subchapter may be seized by the Attorney General upon process issued pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims by any district court of the United States having jurisdiction over the property, except that seizure without such process may be made when —

(1) the seizure is incident to an arrest or a search under a search warrant or an inspection under an administrative inspection warrant;

(2) the property subject to seizure has been the subject of a prior judgment in favor of the United States in a criminal injunction or forfeiture proceeding under this subchapter;

(3) the Attorney General has probable cause to believe that the property is directly or indirectly dangerous to health or safety; or

(4) the Attorney General has probable cause to believe that the property is subject to civil forfeiture under this subchapter.

In the event of seizure pursuant to paragraph (3) or (4) of this subsection, proceedings under subsection (d) of this section shall be instituted promptly.

The Government may request the issuance of a warrant

authorizing the seizure of property subject to forfeiture under this section in the same manner as provided for a search warrant under the Federal Rules of Criminal Procedure.

## (c) Custody of Attorney General

Property taken or detained under this section shall not be repleviable, but shall be deemed to be in the custody of the Attorney General, subject only to the orders and decrees of the court or the official having jurisdiction thereof. Whenever property is seized under any of the provisions of this subchapter, the Attorney General may —

(1) place the property under seal;

(2) remove the property to a place designated by him; or

(3) require that the General Services Administration take custody of the property and remove it, if practicable, to an appropriate location for disposition in accordance with law.

## (d) Other laws and proceedings applicable

The provisions of law relating to the seizure, summary and judicial forfeiture, and condemnation of property for violation of the customs laws; the disposition of such property or the proceeds from the sale thereof; the remission or mitigation of such forfeitures; and the compromise of claims shall apply to seizures and forfeitures incurred, or alleged to have been incurred, under any of the provisions of this subchapter, insofar as applicable and not inconsistent with the provisions hereof; except that such duties as are imposed upon the customs officer or any other person with respect to the seizure and forfeiture of property under the customs laws shall be performed with respect to seizures and forfeitures of property under this subchapter by such officers, agents, or other persons as may be authorized or designated for that purpose by the Attorney General, except to the extent that such duties arise from seizures and forfeitures effected by any customs officer.

(e) Disposition of forfeited property

(1) Whenever property is civilly or criminally forfeited under this subchapter the Attorney General may —

(A) retain the property for official use or, in the manner provided with respect to transfers under section 1616a of title 19, transfer the property to any Federal agency or to any State or local law enforcement agency which participated directly in the seizure or forfeiture of the property;

(B) except as provided in paragraph (4), sell, by public sale or any other commercially feasible means, any forfeited property which is not required to be destroyed by law and which is not harmful to the public;

(C) require that the General Services Administration take custody of the property and dispose of it in accordance with law;

(D) forward it to the Drug Enforcement Administration for disposition (including delivery for medical or scientific use to any Federal or State agency under regulations of the Attorney General); or

(E) transfer the forfeited personal property or the proceeds of the sale of any forfeited personal or real property to any foreign country which participated directly or indirectly in the seizure or forfeiture of the property, if such a transfer —

(i) has been agreed to by the Secretary of State;

(ii) is authorized in an international agreement between the United States and the foreign country; and

(iii) is made to a country which, if applicable, has been certified under section 2291j(b) of title 22.

(2)(A) The proceeds from any sale under subparagraph (B) of paragraph (1) and any moneys forfeited under this subchapter shall be used to pay —

(i) all property expenses of the proceedings for forfeiture and sale including expenses of seizure, maintenance of custody, advertising, and court costs; and

(ii) awards of up to $100,000 to any individual who provides original information which leads to the arrest and conviction of a person who kills or kidnaps a Federal drug law enforcement agent.

Any award paid for information concerning the killing or kidnapping of a Federal drug law enforcement agent, as provided in clause (ii), shall be paid at the discretion of the Attorney General.

(B) The Attorney General shall forward to the Treasurer of the United States for deposit in accordance with section 524(c) of title 28, any amounts of such moneys and proceeds remaining after payment of the expenses provided in subparagraph (A), except that, with respect to forfeitures conducted by the Postal Service, the Postal Service shall deposit in the Postal Service Fund, under section 2003(b)(7) of title 39, such moneys and proceeds.

(3) The Attorney General shall assure that any property transferred to a State or local law enforcement agency under paragraph (1)(A) —

(A) has a value that bears a reasonable relationship to the degree of direct participation of the State or local agency in the law enforcement effort resulting in the forfeiture, taking into account the total value of all property forfeited and the total law enforcement effort with respect to the violation of law on which the forfeiture is based; and

(B) will serve to encourage further cooperation between the recipient State or local agency and Federal law enforcement agencies.

(4)(A) With respect to real property described in subparagraph (B), if the chief executive officer of the State involved submits to the Attorney General a request for purposes of such subparagraph, the authority established in such subparagraph is in lieu of the authority established in paragraph (1)(B).

(B) In the case of property described in paragraph (1)(B) that is civilly or criminally forfeited under this subchapter, if the property is real property that is appropriate for use as a public area reserved for recreational or historic purposes or for the preservation of natural conditions, the Attorney General, upon the request of the chief executive officer of the State in which the property is located, may transfer title to the property to the State, either without

charge or for a nominal charge, through a legal instrument providing that —

(i) such use will be the principal use of the property; and

(ii) title to the property reverts to the United States in the event that the property is used otherwise.

(f) Forfeiture and destruction of schedule I and II substances

(1) All controlled substances in schedule I or II that are possessed, transferred, sold, or offered for sale in violation of the provisions of this subchapter; all dangerous, toxic, or hazardous raw materials or products subject to forfeiture under subsection (a)(2) of this section; and any equipment or container subject to forfeiture under subsection (a)(2) or (3) of this section which cannot be separated safely from such raw materials or products shall be deemed contraband and seized and summarily forfeited to the United States. Similarly, all substances in schedule I or II, which are seized or come into the possession of the United States, the owners of which are unknown, shall be deemed contraband and summarily forfeited to the United States.

(2) The Attorney General may direct the destruction of all controlled substances in schedule I or II seized for violation of this subchapter; all dangerous, toxic, or hazardous raw materials or products subject to forfeiture under subsection (a)(2) of this section; and any equipment or container subject to forfeiture under subsection (a)(2) or (3) of this section which cannot be separated safely from such raw materials or products under such circumstances as the Attorney General may deem necessary.

(g) Plants

(1) All species of plants from which controlled substances in schedules I and II may be derived which have been planted or cultivated in violation of this subchapter, or of which the owners or cultivators are unknown, or which are wild growths, may be seized and summarily forfeited to the United States.

(2) The failure, upon demand by the Attorney General or his duly authorized agent, of the person in occupancy or in control of land or premises upon which such species of plants are growing or being stored, to produce an appropriate registration, or proof that he is the holder thereof, shall constitute authority for the seizure and forfeiture.

(3) The Attorney General, or his duly authorized agent, shall have authority to enter upon any lands, or into any dwelling pursuant to a search warrant, to cut, harvest, carry off, or destroy such plants.

(h) Vesting of title in United States

All right, title, and interest in property described in subsection (a) of this section shall vest in the United States upon commission of the act giving rise to forfeiture under this section.

(i) Stay of civil forfeiture proceedings

The filing of an indictment or information alleging a violation of this subchapter or subchapter II of this chapter, or a violation of State or local law that could have been charged under this subchapter or subchapter II of this chapter, which is also related to a civil forfeiture proceeding under this section shall, upon motion of the United States and for good cause shown, stay the civil forfeiture proceeding.

(j) Venue

In addition to the venue provided for in section 1395 of title 28 or any other provision of law, in the case of property of a defendant charged with a violation that is the basis for forfeiture of the property under this section, a proceeding for forfeiture under this section may be brought in the judicial district in which the defendant owning such property is found or in the judicial district in which the criminal prosecution is brought.

(l) Agreement between Attorney General and Postal Service for performance of functions

The functions of the Attorney General under this section shall be carried out by the Postal Service pursuant to such agreement as may be entered into between the Attorney General and the Postal Service.

(Pub. L. 91-513, Title II, § 511, Oct. 27, 1970, 84 Stat. 1276; Pub. L. 95-633, Title III, § 301(a), Nov. 10, 1978, 92 Stat. 3777; Pub. L. 96-132, § 14, Nov. 30, 1979, 93 Stat. 1048; Pub. L. 98-473, Title II, §§ 306, 309, 518, Oct. 12, 1984, 98 Stat. 2050, 2051, 2075; Pub. L. 99-570, Title I, §§ 1006(c), 1865, 1992, Oct. 27, 1986, 100 Stat. 3207-7, 3207-54, 3207-60; Pub. L. 99-646, § 74, Nov. 10, 1986, 100 Stat. 3618; Pub. L. 100-690, Title V, VI, §§ 5105, 6059, 6074, 6075, 6077(a), (b), 6253, Nov. 18, 1988, 102 Stat. 4301, 4320, 4323-4325, 4363; Pub. L. 101-189, Div. A, Title XII, § 1215(a), Nov. 29, 1989, 103 Stat. 1569; Pub. L. 101-647, Title XX, §§ 2003, 2004, 2007, 2008, Nov. 29, 1990, 104 Stat. 4855, 4856; Pub. L. 102-239, § 2, Dec. 17, 1991, 105 Stat. 1912; Pub. L. 102-583, § 6(a), Nov. 2, 1992, 106 Stat. 4932; Pub. L. 103-447, Title I, § 102(d), Nov. 2, 1994, 108 Stat. 4693.)