# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 75038-1-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| SHAUN CHRISTINE JOHNSON, | ) | |
| | ) | |
| Appellant. | ) | FILED: July 18, 2016 |

TRICKEY, J. — Shaun Christine Johnson appeals her convictions for possession of methamphetamine and vehicular assault. Before her arrest, a police officer searched her purse to obtain her driver's license and proof of insurance. In doing so, the officer also found baggies containing methamphetamine.

Johnson argues that the trial court should have suppressed that evidence. The State maintains that the officer properly searched her purse while fulfilling a community caretaking function. Because the State cannot show that the police officer was addressing a health or safety need, we agree with Johnson. We cannot say that the erroneous admission of this evidence was harmless beyond a reasonable doubt. We reverse and remand for a new trial.

## FACTS

On a clear, dry morning in early June 2013, Shaun Johnson drove off a straight road and crashed into a ditch. Johnson claimed she had reached down to pick up a burning cigarette.

Karen Nelson, who was driving on the same road, stopped when she saw Johnson's vehicle in the ditch. She found Johnson, still in the driver's seat,

seemingly shaken. Nelson waited with Johnson for approximately 20 minutes until an ambulance arrived.

Deputy Timothy Gosch was the first police officer on the scene. While attempting to retrieve Johnson's driver's license and proof of insurance, he found suspected methamphetamine in her purse. Based on that discovery, he asked her about her drug use. He pointed out that the medics needed accurate information in order to treat her properly. Johnson admitted that she was addicted to methamphetamine and had used it two days earlier. Deputy Gosch did not observe any signs that Johnson was currently impaired.

Johnson left for the hospital in an ambulance and Deputy Gosch waited for a tow truck operator to remove Johnson's car. After the tow truck operator had pulled Johnson's car out of the roadway, Deputy Gosch left the scene.

The tow truck driver discovered that a 16-year-old boy, Justin Carey, had been hit by Johnson's car. Carey suffered serious injuries, including having his leg amputated.

Deputy Gosch met with Detective Christopher Luque at the hospital. Detective Luque, a trained Drug Recognition Expert (DRE), interviewed Johnson there. Deputy Gosch had already told Detective Luque that Johnson had methamphetamine in her purse. Detective Luque did not complete the entire DRE protocol to determine whether Johnson was impaired because of Johnson's injuries and his desire to test her blood before any evidence disappeared. When he determined that he had enough probable cause to believe she was impaired, he placed her under arrest and obtained a search warrant to test her blood.

The State charged Johnson with vehicular assault, with an aggravating factor that the victim's injuries substantially exceeded the level of harm necessary to satisfy the elements of the offense, possession of a controlled substance - methamphetamine, and bail jumping. Johnson moved to suppress the methamphetamine found in her purse and the results of the search warrant to test her blood. The trial court denied both motions.

Nelson said at trial that, based on her personal experience of using methamphetamine and being around others when they used methamphetamine, she believed Johnson had been high at the time of the accident. But she admitted it was difficult to determine whether Johnson was high or just shaken from the accident.

Detective Luque testified at trial that he believed Johnson was impaired based on his observations of her, including her lack of dexterity, delayed responses to questions, and his years of training and experience.

A forensic scientist at the Washington State Patrol Crime Laboratory stated that he analyzed the substance Deputy Gosch found in Johnson's purse and confirmed that it was methamphetamine. A different forensic scientist, from the Washington State Patrol's Toxicology Laboratory, testified that the blood tested positive for methamphetamine. The methamphetamine was concentrated at 0.11mg of methamphetamine per liter of blood.

The forensic scientist testified this concentration was inconsistent with a medical usage of methamphetamine. He stated that someone would be affected by that concentration of the drug but could not specify what behaviors they would

exhibit, explaining that methamphetamine is a biphasic drug, meaning that there are upswings and downswings. He also explained that a person who has more tolerance for the drug might have smaller physical manifestations at this concentration level than someone who was using methamphetamine for the first time. He confirmed that, because the sample had been taken six or seven hours after the crash, the concentration of methamphetamine in Johnson's blood would have been higher at the time of the accident.

The jury convicted Johnson of all charges. Johnson appeals her convictions for possession of a controlled substance and vehicular assault, but does not challenge her bail jumping conviction.

## ANALYSIS

### Community Caretaking Function

Johnson argues that the trial court erroneously denied her CrR 3.6 motion to suppress the evidence of methamphetamine found in her purse. We agree.

We review the denial of a motion to suppress to determine whether the trial court's findings of fact are supported by substantial evidence and whether those findings of fact support the conclusions of law. State v. Garvin, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). "[T]he absence of a finding of fact in favor of the party with the burden of proof as to a disputed issue is the equivalent of a finding against the party on that issue." Yakima Police Patrolmen's Ass'n v. City of Yakima, 153 Wn. App. 541, 562, 222 P.3d 1217 (2009). We treat unchallenged findings of fact as verities on appeal. State v. Acrey, 148 Wn.2d 738, 745, 64 P.3d 594 (2003). We review conclusions of law de novo. Acrey, 148 Wn.2d at 745.

The United States and Washington State Constitutions require police to obtain a warrant before conducting a search or seizure. U.S. CONST. amend. IV; WASH. CONST. art. I, § 7; Garvin, 166 Wn.2d at 249. But there are a few exceptions to the warrant requirement, including the community caretaking function. State v. Thompson, 151 Wn.2d 793, 802, 92 P.3d 228 (2004). Under this exception, police officers who are not engaged in criminal investigations may intrude on people's "constitutionally protected privacy rights" in order to "render aid or assistance or when making routine checks on health and safety." Thompson, 151 Wn.2d at 802. The exception applies only when:

(1) the police officer subjectively believed that someone likely needed assistance for health or safety concerns;
(2) a reasonable person in the same situation would similarly believe that there was need for assistance; and
(3) there was a reasonable basis to associate the need for assistance with the place being searched.

Thompson, 151 Wn.2d at 802.[1] "'Whether an encounter made for noncriminal noninvestigatory purposes is reasonable depends on a balancing of the individual's interest in freedom from police interference against the public's interest in having the police perform a community caretaking function.'" Thompson, 151 Wn.2d at 802 (internal quotation marks omitted) (quoting Kalmas v. Wagner, 133 Wn.2d 210, 216-17, 943 P.2d 1369 (1997)). The State bears a "heavy burden" of

---

[1] The community caretaking function also includes situations where police officers are rendering emergency assistance. Because of the "greater urgency" in emergency situations, the searches may result "in greater intrusion." State v. Kinzy, 141 Wn.2d 373, 386, 5 P.3d 668 (2000), as corrected (Aug. 22, 2000). But there are additional requirements for police action under the emergency aid exception. State v. Schultz, 170 Wn.2d 746, 754, 248 P.3d 484 (2011). The State does not argue that the emergency aid exception applies.

5

establishing that an exception to the warrant requirement applies. Schultz, 170 Wn.2d at 754.

In Thompson, police officers entered the trailer where Thompson lived to arrest him on an outstanding warrant. 151 Wn.2d at 798. They ordered Thompson and a guest out of the trailer and arrested Thompson. Thompson, 151 Wn.2d at 798. When they told the guest to leave, he told them he needed his jacket, which was inside the trailer. Thompson, 151 Wn.2d at 798. One of the officers entered the trailer a second time to retrieve the guest's jacket and found, in plain view, methamphetamine. Thompson, 151 Wn.2d at 798.

When Thompson moved to suppress the results of this warrantless search of his trailer under the Fourth Amendment, the State claimed that the police were exercising their community caretaking function. Thompson, 151 Wn.2d at 802. The Supreme Court disagreed. Thompson, 151 Wn.2d at 802. It held that it was unreasonable to believe that the retrieval of the guest's jacket raised an "immediate need for assistance for health or safety concerns." Thompson, 151 Wn.2d at 803. And, even if it had raised a health or safety concern, the need to retrieve the jacket would "not outweigh Thompson's privacy interest in the trailer." Thompson, 151 Wn.2d at 803.

By contrast, the police officers in State v. Weller were within the community caretaking function when they entered a house to interview teenagers who had complained of physical abuse. 185 Wn. App. 913, 925, 344 P.3d 695, review denied, 183 Wn.2d 1010, 352 P.3d 188 (2015). Once in the house, the officers moved into the garage to interview the children in private. Weller, 185 Wn. App.

6

at 926. In the garage, they saw the board that the defendants had used to beat the children. Weller, 185 Wn. App. at 919. The court upheld admission of the board because, when they entered the garage, the police officers had a subjective and reasonable belief that the children needed health and safety assistance. Weller, 185 Wn. App. at 925. Their presence in the garage was reasonable because of the need for privacy to continue the welfare check. Weller, 185 Wn. App. at 926. The court held that entering the garage was a more intrusive search than entering the house, but that both were reasonable in light of the public's interest in having police officers check on the welfare of children. Weller, 185 Wn. App. at 925-26.

Here, Johnson does not challenge any of the trial court's findings of fact related to this motion for suppression. The trial court found that Johnson had "willingly provided" Deputy Gosch with her driver's license when he asked for it. Then he returned the driver's license to Johnson. Later, "[w]hile retrieving [Johnson's] driver's license from her purse to fill out the traffic collision report and vehicle tow sheet, Deputy Gosch located two small plastic baggies containing a crystal substance that[,] based on his training and experience, he suspected was [m]ethamphetamine."[2]

The court did not identify a specific health or safety concern other than the need to document the accident. The trial court concluded as a matter of law that "Deputy Gosch had justification to look inside the Defendant's purse for her driver's license, as he was performing his community caretaking function in documenting

---

[2] Clerk's Papers (CP) at 169.

the single-vehicle accident."[3] In its oral ruling, the trial court concluded that Deputy Gosch's search of Johnson's purse was reasonable under the totality of the circumstances.

We treat the absence of a finding that there was a health or safety need for this intrusion as a finding that the State failed to meet its burden of proof on this issue. Without a finding that there was a health or safety need, the facts do not support the trial court's conclusion that Deputy Gosch's intrusion into Johnson's purse was a valid exercise of his community caretaking function.

But, even looking beyond the specific factual findings, the record from the suppression hearing establishes that this was not a community caretaking function. Deputy Gosch testified that his actions were not motivated by a need to protect Johnson's health or safety. He agreed that there were not any health or safety concerns "that caused him to go into the purse."[4] He also testified that he did not ask Johnson for permission to get the driver's license or proof of insurance out of her purse, although she was conscious and could have given it to him.

The closest Deputy Gosch's testimony approached to identifying a health and safety concern for his actions was that he needed to tow the damaged vehicle away. But, although he stated he needed Johnson's proof of insurance for the tow form and accident report, he did not testify that he could not arrange to tow away the car without the information. The only urgency he noted was to fill out the accident form quickly so that the tow operator would not have to wait.

---

[3] CP at 173.
[4] Report of Proceedings (RP) (Jan. 6, 2015) at 39.

In short, the trial court erred by denying Johnson's motion to suppress the methamphetamine found in her purse. The State cites several cases involving police searches for support. In two of the State's cases, the officers were clearly motivated by safety concerns. In the first case, State v. Mennegar, the police officer stopped someone for speeding and then discovered that the driver was under the influence. 114 Wn.2d 304, 309, 787 P.2d 1347 (1990). Instead of impounding the car, he agreed to allow the passenger to drive the car home, but asked the passenger for proof of a valid driver's license before allowing him to drive away. Mennegar, 114 Wn.2d at 309. The court held this was an appropriate exercise of the community caretaking function. Mennegar, 114 Wn.2d at 312-13. In the second case, State v. Lowrimore, the police officer searched the purse of a suicidal teenager for weapons, after her parents told him they believed she had knives in her purse. 67 Wn. App. 949, 955-57, 841 P.2d 779 (1992). The court held that the police were assisting in an emergency. Lowrimore, 67 Wn. App. at 958.

The court also approved police officers' actions in State v. Lynch, 84 Wn. App. 467, 478-79, 929 P.2d 460 (1996). There, the police entered a car that they believed had been broken into by someone. Lynch, 84 Wn. App. at 478. When the police reached for a checkbook, so they could identify the owner and inform him that his car had been broken into, the police found cocaine. Lynch, 84 Wn. App. at 470. The court upheld the search. Lynch, 84 Wn. App. at 478-79.

The State claims the search in Lynch is similar to the officer's attempt here "to officially identify the driver of a vehicle crash."[5] First, that is not a fair description of Deputy Gosch's actions. He had already learned and verified Johnson's identity by the time he searched her purse. Second, the officer in Lynch was attempting to assist the car owner; Deputy Gosch was not.

Similarly, in State v. Kealey, the officers searched a mislaid purse in an attempt to identify the owner. 80 Wn. App. 162, 173, 907 P.2d 319 (1995). The court noted that people have a reduced privacy interest in property they have mislaid and that police officers have a statutory duty to attempt to return lost property to its owners. Kealey, 80 Wn. App. at 173. This case, too, is distinguishable because Johnson had not lost her purse.

None of the State's cited authority supports the argument that Deputy Gosch's need to fill out paperwork justifies a warrantless search. Because the State fails to show that searching Johnson's purse was justified under the community caretaking exception to the warrant requirement, the search was illegal.

"When an unconstitutional search or seizure occurs, all subsequently uncovered evidence becomes fruit of the poisonous tree and must be suppressed." State v. Ladson, 138 Wn.2d 343, 359-60, 979 P.2d 833 (1999). The erroneous admission of unconstitutionally obtained evidence requires reversal unless we are "convinced beyond a reasonable doubt that any reasonable trier of fact would have reached the same result despite the error." Thompson, 151 Wn.2d at 808. We will uphold the verdict only if the untainted evidence is so overwhelming that it

---

[5] Br. of Resp't at 19.

"necessarily leads to a finding of guilt." State v. Anderson, 171 Wn.2d 764, 770, 254 P.3d 815 (2011). The State bears the burden of showing that the error was harmless. State v. Coristine, 177 Wn.2d 370, 380, 300 P.3d 400 (2013).

Because Deputy Gosch's search of Johnson's purse was illegal, the trial court erred by denying Johnson's motion to suppress the methamphetamine that Deputy Gosch seized. Neither party addressed whether other admitted evidence should also have been suppressed as fruits of the poisonous tree. The State also does not argue that the error in admitting the methamphetamine was harmless beyond a reasonable doubt. After reviewing the evidence ourselves, we are not convinced beyond a reasonable doubt that the error was harmless for either the possession of methamphetamine or vehicular assault conviction.

The primary evidence used to prove that Johnson possessed methamphetamine was the methamphetamine found in her purse. We cannot assume the jury would have convicted Johnson for possession of methamphetamine without that critical evidence. The error requires reversal of Johnson's conviction for possession of a controlled substance.

The State also used the methamphetamine in Johnson's purse as evidence that she was under the influence of methamphetamine when she struck Carey. The State's other evidence for this charge included Johnson's statements that she was addicted to methamphetamine and had used it within days of the accident, Detective Luque's and Nelson's opinions that Johnson was impaired after the accident, and that Johnson's blood tested positive for methamphetamine. Given that the State bears the burden of proving harmlessness, we do not assume that

the State's witnesses' testimony was not tainted by the improper admission of the methamphetamine. On this record, we cannot determine what impact the discovery of methamphetamine in Johnson's purse had on the discovery of that evidence or its admission. Neither can we conclude its admission did not contribute to the vehicular assault conviction. Since we cannot say the error was harmless beyond a reasonable doubt, this error also requires reversal of the vehicular assault conviction.

## Other Assignments of Error

Johnson assigned error to the denial of her other motion to suppress the evidence obtained as a result of the search warrant, arguing that the State did not establish probable cause for the warrant. The affidavit included that Deputy Gosch found methamphetamine in her purse and that she admitted to using methamphetamine. Johnson argues that, even with that evidence, the affidavit is insufficient to establish probable cause that she was under the influence or affected by methamphetamine at the time of the accident. We disagree with this assertion.

But, because we have concluded that the methamphetamine was seized unlawfully, it may not be considered when determining the sufficiency of the affidavit. However, Johnson nowhere argues that her statements were obtained unlawfully. Accordingly, we leave it to the trial court to determine on remand whether the statements are admissible in light of our conclusion that the methamphetamine was unlawfully seized and, if not, whether the remainder of the affidavit is sufficient to establish probable cause.

Johnson also assigned error to several events during trial, including the admissions of Nelson's and Detective Luque's opinion testimony and that the prosecutor committed misconduct in his closing argument. Because these alleged errors are unlikely to recur on remand, we do not reach them.

Johnson also challenges the adequacy of the charging information and the "to convict" jury instruction on the grounds that they omitted an element of the vehicular assault. We do not reach these issues because the trial court has not had an opportunity to address them and much of Johnson's argument does not appear until the reply brief.

We reverse and remand for further proceedings consistent with this opinion.

Trickey, ACJ

WE CONCUR: